### STATE OF CONNECTICUT *v.* VANCE SOLMAN
### (AC 19411)

Landau, Pellegrino and Daly, Js.

Argued September 12—officially released December 11, 2001

*William B. Westcott,* for the appellant (defendant).

*Elpedio N. Vitale,* senior assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Vance Solman, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (5),[1] burglary in the first degree in violation of General Statutes § 53a-101 (a) (1),[2] risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21[3] and criminal possession of a firearm in violation of General Statutes (Rev. to 1997) § 53a-217.[4]

The defendant claims that the trial court (1) improperly failed to instruct the jury sua sponte on the inherent unreliability of jailhouse informer testimony and (2) improperly instructed the jury on proof beyond a reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In September, 1997, the victim and his wife were employed at a McDonald's restaurant in Branford and became acquainted with the defendant, who was employed at a nearby Mobil gas station. The defendant's

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[2] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

[3] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured . . . shall be guilty of a class C felony."

[4] General Statutes (Rev. to 1997) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when he possesses a firearm . . . and (1) has been convicted of a . . . felony . . . ."

nephew also was employed at the Mobil station and became friendly with the victim's wife. That friendship eventually progressed to the point where the victim felt that it was necessary to intervene and, accordingly, he told the defendant's nephew to leave his wife alone. The victim's brother-in-law also confronted the nephew and recommended a curtailment of the relationship.

Shortly after midnight, on September 24, 1997, as he lay in bed with his wife and child, the victim heard a loud banging at the back door of their apartment. The victim walked to the kitchen to investigate the disturbance when the defendant burst through the door and shot the victim several times before fleeing. Ten .22 caliber shell casings were found at the scene along with a live round. The defendant was apprehended thereafter, and the police discovered a live .22 caliber round at his residence during a search of the premises.

While awaiting trial, the defendant was incarcerated at the Cheshire Correctional Institution, where he became friendly with a fellow inmate, Robert Horrocks. He admitted to Horrocks that he had shot the victim and solicited Horrocks, if released on bond, to kill the victim and his spouse. He wrote out the names of the targets, their descriptions and the address of the victim's mother-in-law.

I

The defendant first argues that the court improperly failed to instruct the jury, sua sponte, on the allegedly inherent unreliability of jailhouse informer testimony in violation of the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. The defendant concedes that he did not request a special instruction regarding jailhouse informer testimony and did not object to the court's failure to give such an instruction sua sponte. See Prac-

tice Book §§ 42-16[5] and 60-5.[6] The defendant requests, however, that this court review the claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or, alternatively, under the plain error doctrine. See Practice Book § 60-5.

## A

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Andresen*, 256 Conn. 313, 325, 773 A.2d 328 (2001). "The appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 240.

---

[5] Practice Book § 42-16 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

[6] Practice Book § 60-5 provides in relevant part: "[T]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

The defendant's claim fails to satisfy the second prong of *Golding* in that it fails to raise a constitutional claim. "Just as every claim of evidentiary error by the trial court is not truly constitutional in nature . . . every claim of instructional error is not truly constitutional in nature. We have recognized, for example, that claimed instructional errors regarding the elements of an offense . . . and claimed instructional errors regarding the burden of proof or the presumption of innocence . . . are constitutional in nature, so as to satisfy the second *Golding* requirement. We have also recognized, however, that claimed instructional errors regarding general principles of credibility of witnesses are not considered constitutional in nature." (Citations omitted.) *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993).

Because the defendant has not met the second prong of *Golding*, we will not review his claim that the court should have instructed the jury sua sponte on the alleged unreliability of jailhouse informer testimony.

B

The defendant also seeks review, under the plain error doctrine, of the court's failure to provide a special credibility instruction. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992). A defendant "cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . Moreover, because the claim raised here is nonconstitutional, the defendant must demonstrate that the trial court's improper action likely

affected the result of his trial." (Internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 280, 780 A.2d 53 (2001).

"Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely." *State* v. *Ortiz*, 252 Conn. 533, 561, 747 A.2d 487 (2000). As our Supreme Court has stated, "[t]o require the court to single out witnesses upon request for comment upon their interest in the outcome of the case as a motive to falsify their testimony would not only constitute regression in the progress achieved in permitting the jury to identify and weigh such motives for themselves, but would also, in many circumstances, frustrate the efforts of the trial judge to deliver evenly balanced instructions to the jury to consider the interest in the outcome of all the witnesses, testifying for both sides." *State* v. *Cooper*, 182 Conn. 207, 217–18, 438 A.2d 418 (1980).

The jury had before it sufficient evidence with which reasonably to judge the credibility of Horrocks' testimony. The court's charge on the credibility of witnesses encompasses seven pages of transcript. The court informed the jurors that it was their role to determine the facts, to determine which witnesses to believe and to consider what motive a witness might have in testifying. The charge to the jury also included a specific instruction that the jury could consider Horrocks' prior convictions in weighing his credibility.

During cross-examination, Horrocks admitted that he was testifying because he hoped to gain something by doing so. He also indicated that he "really wanted" a sentence modification. Notwithstanding Horrocks' testimony that the prosecution had made no promises with respect to whether the sentence modification would be granted and the omission of the fact that the prosecu-

tion already had provided the necessary approval for such a modification to be considered, the jury was on notice as to Horrocks' incentive to testify in support of the prosecution's case. There is nothing about Horrocks' testimony that would tend to produce an improper belief in its inherent credibility.

Moreover, the defendant has failed to demonstrate that the claimed error affected the outcome of his trial. The prosecution presented several witnesses whose testimony implicated the defendant in the crimes for which he was convicted, including the eyewitness testimony of the victim's wife. The prosecution also offered substantial circumstantial evidence of the defendant's involvement in the incident. Even if the jury had rejected Horrocks' testimony, it had before it enough evidence to support a guilty verdict.

We conclude, therefore, that the omission of an informer instruction in the court's charge does not present a truly extraordinary situation warranting plain error review.

## II

The defendant next claims that the court's instruction to the jury as to reasonable doubt improperly undermined the presumption of innocence and diluted the burden of proof that the state must meet to obtain a guilty verdict. We disagree.

The defendant's claim is based on the following sentences in the court's instructions: "However, if you can in reason reconcile all the facts proven within a reasonable theory consistent with the innocence of the accused, then you cannot find him guilty. On the other hand, if you find that the proven facts do establish the guilt of the accused beyond a reasonable doubt, then the proper verdict will be guilty."

The defendant concedes that his claim was not preserved properly for appeal and now seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. "At the outset, we note that under . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . [I]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Delgado*, 50 Conn. App. 159, 171, 718 A.2d 437 (1998).

The defendant's claim fails to satisfy the third prong of *Golding* in that it fails to establish that a constitutional violation clearly existed and clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 239–40. Our appellate courts have, on numerous occasions, affirmed the constitutionality of language instructing a jury on the reasonable doubt standard identical to that complained of by the defendant. See, e.g., *State* v. *Small*, 242 Conn. 93, 114–15, 114 n.17, 700 A.2d 617 (1997); *State* v. *Dawkins*, 42 Conn. App. 810, 821, 681 A.2d 989, cert. denied, 239 Conn. 932, 683 A.2d 400 (1996); *State* v. *Lopez*, 37 Conn. App. 509, 513–15,

657 A.2d 647, cert. denied, 234 Conn. 902, 660 A.2d 858 (1995).

The judgment is affirmed.

In this opinion the other judges concurred.