STATE OF CONNECTICUT *v.* CARLOS BATISTA
(AC 27123)

Bishop, Harper and Peters, Js.

Argued February 13—officially released June 5, 2007

*Annacarina Del Mastro*, senior assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. The principal claim in this criminal appeal is that a jury mistakenly identified the defendant as the person who committed certain acts constituting robbery in the first degree, burglary in the first degree and reckless endangerment in the first degree. The defendant maintains that, even if the jury found credible his partial identification as the robber by one of the victims, and his having been referred to by name during the robbery, his guilt of the crimes with which he was charged was not proven beyond a reasonable doubt. We disagree and affirm the judgment of the trial court.

In an amended information filed on August 17, 2005, the state charged the defendant, Carlos Batista, with four counts of robbery in the first degree in violation

of General Statutes § 53a-134 (a) (4),[1] one count of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1)[2] and five counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a).[3] The jury found the defendant not guilty on count one but found him guilty of the remaining three counts of robbery in the first degree, one count of burglary in the first degree and five counts of reckless endangerment in the first degree. The court accepted the jury's verdict and sentenced the defendant to a total effective term of ten years imprisonment and five years of special parole. The defendant has appealed.

## I

### SUFFICIENCY OF THE EVIDENCE

The defendant claims, for a variety of reasons, that the evidence was insufficient as a matter of law to support his conviction of robbery, burglary and reckless endangerment. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged . . . ."

[2] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (1) [h]e is armed with . . . a deadly weapon or dangerous instrument . . . ."

[3] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Hicks*, 101 Conn. App. 16, 21, 919 A.2d 1052 (2007). "[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mulero*, 91 Conn. App. 509, 513, 881 A.2d 1039 (2005), cert. denied, 277 Conn. 912, 895 A.2d 792, cert. denied, 549 U.S. 862, 127 S. Ct. 149, 166, L. Ed. 2d 108 (2006).

The jury reasonably could have found the following facts. On April 27, 2004, at some time between 12:15 and 12:30 a.m., five men[4] were occupying a basement apartment located at 117 Shelton Street in Bridgeport. The outside door to the apartment was closed but not locked.

Three masked male intruders, at least one of whom was carrying a shotgun, entered the apartment and ordered all the occupants to get on the floor and to hand over their money. The subsequent discharge of the shotgun into the cement floor of the apartment resulted in personal injury to Ivan Jairo Perez Ruiz, one of the occupants.

---

[4] The victims' names were Orsini Mateos-Hernandez, Ivan Jairo Perez Ruiz, Eliseo Ruiz Perez, Marino Ruiz Ramirez and Eleazar Hernandez. For clarity, we will refer to the victims by their full names.

The intruders specifically ordered four of the occupants, Marino Ruiz Ramirez, Eliseo Ruiz Perez, Orsini Mateos-Hernandez and Eleazar Hernandez, to surrender their wallets and threatened all of them with being shot if they moved.[5] Marino Ruiz Ramirez heard one of the intruders say to one of the others, "Carlos, if they move, shoot." Orsini Mateos-Hernandez heard one of them say, "Chino, hurry up." Eleazar Hernandez similarly heard one of the intruders referred to by the name Carlos.

The police quickly were called to the scene by the occupants of the apartment immediately above the basement apartment. Alerted by his wife of a disturbance, Felix Martinez observed the intruders as they fled from the building in a red car that had what he described as a raised back. One of the men whom he saw was wearing a mask and holding a firearm. His son immediately called the police.

Responding to the police call, Officer Abe Konoval drove to the scene in his police cruiser. At the nearby intersection of Ogden and Williams Streets, he observed a red car with a rear spoiler coming toward him. Konoval stopped the car, handcuffed the defendant and placed him in the back of the police cruiser pending further investigation.[6] Konoval observed and collected a shotgun shell from the backseat of the red vehicle.[7]

---

[5] In the defendant's argument on his motion for a judgment of acquittal, the defendant acknowledged the evidence given by Eleazar Hernandez, in his statement to the police as well as in his testimony at trial, that "they took our wallets." He did not, therefore, argue that there was insufficient evidence to support the jury's findings that three robberies had occurred.

[6] When Officer Richard Cretella arrived at the scene to back up Konoval, an individual identifying himself as Roberto Encarnacion approached and informed him that he was the brother of the individual in the back of the police cruiser. He also indicated that he had left his keys in the car.

[7] Returning to the apartment, the police therein found a spent, .410 shotgun shell. Unused .410 shotgun shells were found in the trunk of the red car, and an unused twelve gauge shotgun shell was recovered from its backseat.

At trial, a ballistics expert testified for the state that the shotgun shells recovered from the trunk of the red car had been loaded into the same gun from which spent shell had been fired.

Another police officer, Richard Cretella, who joined Konoval, noticed Robert Encarnacion, the defendant's brother, in the vicinity. Upon questioning, Encarnacion told Cretella that the keys in the red car were his.[8] Martinez and his wife identified the red car that Konoval stopped as the car they had seen at the scene of the crime. Eleazar Hernandez made an identification of the defendant at the scene of the stopped car based on the defendant's pants and boots.

The defendant claims that the evidence adduced at trial was insufficient as a matter of law to convict him of robbery in the first degree because the state did not prove that he acted as a principal in the robberies. In his view, the circumstantial evidence produced at trial, namely, Eleazar Hernandez' identification of him and the victims' testimony that they heard the shooter referred to as Carlos, was not sufficient as a matter of law to convict him. The defendant also challenges the jury's reliance on the identification made by Eleazar Hernandez because Orsini Mateos-Hernandez gave conflicting testimony regarding the shooter's clothing and appearance.[9] We are not persuaded by the defendant's arguments.

In order to find the defendant guilty of robbery in the first degree, the jury had to find, beyond a reasonable doubt, that the evidence showed that the defendant "in the course of the commission of the crime of robbery as defined in section 53a-133 . . . or another participant in the crime . . . (4) represent[ed] or threaten[ed] the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or

---

[8] Encarnacion subsequently pleaded guilty to participating in the robbery.

[9] Orsini Mateos-Hernandez testified at trial that the shooter had been wearing shorts instead of pants. He also testified that the shooter had a tattoo with green lettering on the right side of his neck.

other firearm . . . ." General Statutes 53a-134 (a) (4). "It [is] not necessary, [however] that the state prove the defendant actually compelled [the victims] to deliver up the property or to aid in the larceny; it [is] only necessary to prove that the defendant used or threatened force for that purpose." *State* v. *Horne*, 19 Conn. App. 111, 135, 562 A.2d 43 (1989), rev'd in part on other grounds, 215 Conn. 538, 577 A.2d 694 (1990).

In this case, in addition to the testimony describing the person brandishing the shotgun as Carlos, the state linked the defendant to the robberies through testimony that the spent shotgun cartridge found inside the basement apartment was fired from the same firearm as three of the loaded cartridges found inside the red car in which the defendant was apprehended while driving away from the scene of the crimes. Buttressed by Eleazar Hernandez' identification of the defendant because of the clothes he was wearing, this evidence, although not overwhelming, was sufficient to support the defendant's robbery convictions. "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542–43, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

Furthermore, "[i]t is . . . the absolute right and responsibility of the jury to weigh conflicting evidence

and to determine the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *Falcon*, 90 Conn. App. 111, 132, 876 A.2d 547, cert. denied, 275 Conn. 926, 883 A.2d 1248 (2005). In this case, it was not unreasonable for the jury to choose to believe the testimony of two of the victims who both heard the shooter referred to as Carlos and to discount conflicting testimony by Orsini Mateos-Hernandez with respect to the shooter's clothing and tattoo. See footnote 9. We therefore affirm the defendant's conviction of robbery in the first degree.

We also affirm the defendant's conviction of burglary in the first degree and reckless endangerment in the first degree. The defendant's claim that the state did not present sufficient evidence to convict him of these crimes is, in effect, a restatement of his claim that the evidence did not support the jury's finding that he was the shooter. Having concluded that this claim is unpersuasive with respect to his robbery conviction, we necessarily conclude that it is unpersuasive with respect to the conviction of burglary and reckless endangerment as well.

## II

## JURY INSTRUCTIONS

The defendant claims that the court misinstructed the jury by not including a specific intent instruction for the robbery and the burglary charges. He argues that, by failing to do so, the court's instructions unconstitutionally diluted the state's burden of proof and misled the jury. We disagree.

The defendant concedes that he failed to file a written request to charge on the matter of specific intent or to take exception to the questioned language. Under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),

unpreserved claims of instructional error are reviewable on appeal if the defendant can establish that he has been deprived of his constitutional right to a fair trial. "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id.

The defendant's claim of instructional error is reviewable under *Golding* because he has provided an adequate record for review and because his claim of an improper instruction on the elements of a crime is of constitutional magnitude. *State* v. *Leroy*, 232 Conn. 1, 7, 653 A.2d 161 (1995) ("an improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial"). We conclude, however, that the defendant cannot prevail because he has failed to establish a clear constitutional violation.

"Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that [unmistakably] deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction. . . . The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering

possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Hicks*, 97 Conn. App. 266, 269–70, 903 A.2d 685, cert. denied, 280 Conn. 930, 909 A.2d 958 (2006).

In explaining to the jury that a robbery was "a larceny that is committed by force or threat of force," the court initially focused on the elements of a larceny. The court then explained, no fewer than five times, that the proof of larceny must include "the intent to deprive the owner of the property."[10] The court also gave numerous explanations of the requirement that the force used during the robbery must be used with the intent to deprive another of property or to overcome resistance.

Despite the trial court's multiple references to the specific intent requirements of robbery, the defendant maintains that the court misinstructed the jury by failing specifically to inform the jury that the state had to prove this intent element for each count of robbery. The defendant's reading of the court's instructions is,

---

[10] The defendant claims that the court's instruction that the defendant had the "purpose" of depriving the victim of his property is not equivalent to an instruction on intent. Specifically, the defendant challenges the court's instruction that "[t]he state must prove beyond a reasonable doubt that the defendant took property from another, the owner of the property, for the purpose of keeping the property permanently." As this court has noted before when we have interpreted the larceny statute, General Statutes § 53a-133, "[t]he term purpose is synonymous with the terms 'object' and 'intent.'" *State* v. *Latorre*, 51 Conn. App. 541, 545, 723 A.2d 1166 (1999).

however, unsustainable because it ignores the court's specific instruction that the jury consider each of the four charges of robbery separately.[11] After reviewing the record, we cannot say that the court's instructions created even the slightest probability, let alone a reasonable one, that the jury would be misled. We conclude, therefore, that the court's instructions were proper.[12]

## III

### PROSECUTORIAL IMPROPRIETY[13]

The defendant's final claim is that he was deprived of a fair trial because the prosecutor improperly referred to facts that were not in evidence during closing argument. Despite the defendant's failure to object to these statements at trial, his claim is reviewable in light of *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004). In *Stevenson*, our Supreme Court held that "following a determination that prosecutorial [impropriety] has occurred, regardless of whether it

[11] The court gave the following instruction to the jury: "There are four charges of robbery, and you must evaluate each charge. . . . So, there has to be stealing of property, there has to be use of force to compel the giving up of the property or to prevent resistance, and there has to be the displaying of a firearm. And you have to go through the same analysis for all four charges."

[12] The defendant also claims that the court's instruction on the use of force had a reasonable probability of misleading the jury. This claim borders on frivolous. The defendant challenges that part of the court's instructions in which the court repeated, verbatim, the language of the robbery statute, General Statutes § 53a-133. We do not understand how the reading of the statutory definition of robbery, which is an essential element of robbery in the first degree, can be improper.

The defendant also claims that there was a genuine risk that the jury would have been confused by the court's failure to define "unanimity" for the purposes of the jury's returning its verdict. Reading the instructions as a whole, as we must in light of the principle that the instructions are to be read as a whole; see *State* v. *Hicks*, supra, 97 Conn. App. 269–70; we are not persuaded of the existence of such a risk.

[13] In *State* v. *Fauci*, 282 Conn. 23, 26 n.2, 917 A.2d 978 (2007), our Supreme Court determined that "the term 'prosecutorial impropriety' . . . is more appropriate than the traditional term of 'prosecutorial misconduct . . . .' "

was objected to, an appellate court must apply the . . . factors [set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] to the entire trial." *State* v. *Stevenson*, supra, 575.

Before we review the challenged remarks, we set forth our standard of review. "Prosecutorial [impropriety] claims invoke a two step analysis. First, the reviewing court must determine whether the challenged conduct did, in fact, constitute [an impropriety]. Second, if [an impropriety] occurred, the reviewing court must then determine if the defendant has demonstrated substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process." (Citation omitted; internal quotation marks omitted.) *State* v. *Pedro S.*, 87 Conn. App. 183, 187, 865 A.2d 1177, cert. denied, 273 Conn. 924, 871 A.2d 1033 (2005).

"Because the claimed prosecutorial [impropriety] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Farr*, 98 Conn. App. 93, 106, 908 A.2d 556 (2006).

The defendant enumerates six instances of prosecutorial impropriety in which the state allegedly referred to facts that were not in evidence during its closing argument. The defendant claims that the state improperly argued that: (1) the front passenger seat of his car was soaking wet from the rain and that from this the jury could reasonably infer that the passenger door had been recently left open, (2) Encarnacion told the police that he was out at 1 a.m. looking for a friend even though Encarnacion himself had said he was looking for his brother, (3) Encarnacion responded to the accusation by the police of having been one of the robbers by stating, "How could I be identified if they all had masks on?" even though this statement was not in evidence, (4) two people received minor injuries even though there was evidence of only one person's having received an injury, (5) the jury could infer that the defendant was armed simply based on one of the perpetrators saying, "Carlos, shoot them if they move," and (6) Eleazar Hernandez identified the defendant "as being that individual that had him on the ground at gunpoint," even though Hernandez' testimony did not specifically indicate that the defendant was the actual robber.

A

Impropriety

As noted, the first step in our analysis is to determine whether any of these statements properly can be characterized as an impropriety. In so doing, we must bear in mind that a prosecutor properly may ask the jury to draw reasonable inferences based on the evidence at trial. *State* v. *Farr*, supra, 98 Conn. App. 110. Nonetheless, "[o]ur cases indicate that improper unsworn testimony generally contains the suggestion of secret knowledge . . . on the part of the prosecutor." (Citation omitted; internal quotation marks omitted.) *State*

v. *Holliday*, 85 Conn. App. 242, 260, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004).

We conclude that the only statement made by the prosecutor that could be considered unsworn testimony, and therefore an impropriety, was the sixth statement, in which the prosecutor misstated Eleazar Hernandez' testimony. At trial, Hernandez never testified that there was a gun pointed at his head. Furthermore, although Hernandez identified the defendant by his pants and shoes, he did not identify him as the person who held a gun to his head. The prosecutor nonetheless stated, in closing, that Hernandez testified that "[t]he clothing in the photo was the individual that was holding the gun on me while I was on the ground." This statement was improper.[14]

---

[14] We fail to see how the other alleged misstatements by the state were improper.

The defendant's first claimed impropriety was nothing more than an invitation for the jury to draw a reasonable inference. Kovonal testified that the inside of the car was wet from rain on the passenger's side. The state, in closing argument, stated that this was "[a] reasonable inference that the door had been recently opened and left open." Although this may not have been the only means by which the front passenger seat could have gotten wet, it was a reasonable inference that the prosecutor could ask the jury to draw.

The defendant's second claim of impropriety warrants little discussion because the alleged impropriety was, in fact, a restatement of the sworn testimony of one of the investigating police officers. In closing, the state indicated that Encarnacion was looking for a friend. Although Encarnacion may have in fact been looking for his brother, Cretella's testimony was that Encarnacion asked "if that was his friend or brother-in-law."

The defendant's third claimed impropriety was not improper because it was an accurate characterization of Encarnacion's testimony. Although the defendant claims that the state indicated that Encarnacion had testified: "How could I be identified if they all had masks on?" the record reveals otherwise. The state, in closing, referred not to Encarnacion's statement but to Encarnacion's denial, while on the witness stand, to making that statement to police. The state said, "And his—he denied, you heard him, I never asked him, well, how could I be identified if they all had masks on?" The state was not referring to the statement as having been made by Encarnacion but, rather, as *not* having been asked on direct examination.

The defendant's fourth claim of impropriety rests on the state's statement that two people were injured when, in fact, one individual suffered two

## B

## Prejudice

Although we agree with the defendant that the prosecutor mischaracterized the testimony of Eleazar Hernandez, he is not entitled to a new trial on this ground unless the prosecutor's impropriety caused him to suffer substantial prejudice. Our analysis of the relevant factors under the circumstances of this case persuades us that the defendant's due process rights were not violated.

"In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, [our Supreme Court] has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 540.

Applying the *Williams* factors to the circumstances of this case, we note that the prosecutor's misstatement occurred only once. It follows that there was no pattern

injuries. Although this was a misstatement of the evidence, we do not see how this minor confusion amounts to an impropriety. Moreover, the defendant has failed to prove how he was deprived of a fair trial by this misstatement. According to the defendant, this misstatement could have prejudiced the jury on the charges of reckless endangerment. Actual injury, however, is not an element of reckless endangerment in the first degree; see General Statutes § 53a-63 (a); and therefore could not possibly have prejudiced or misled the jury.

The defendant's fifth claim of impropriety is that the state argued that the jury could reasonably infer from the statement, "Carlos, if they move, shoot," that the defendant was the shooter. As discussed previously, this was a reasonable inference that the jury could draw from the testimony of the victims. See part I. As such, it was reasonable for the state to ask the jury to draw this inference.

of impropriety on the part of the prosecutor. See *State* v. *Young*, 29 Conn. App. 754, 766, 618 A.2d 65, cert. denied, 225 Conn. 904, 621 A.2d 287 (1993).

The one misstatement made by the prosecutor cannot properly be characterized as a severe misstatement because it did not misrepresent unique proof of a fact that the state had to establish to obtain the defendant's conviction. Testimony that Hernandez was held at gunpoint supplemented other evidence adduced by the state to show the defendant's use of force in the robberies and his continued disregard for the safety of others in the apartment. In particular, the state relied on the spent shotgun shell for proof that the defendant had used a weapon during the robbery.

We conclude that the defendant cannot prevail on his claim of prosecutorial impropriety. The occurrence of one isolated impropriety did not deprive the defendant of his right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.