## STATE OF CONNECTICUT *v.* JAMAL BAZEMORE
### (AC 26899)

Flynn, C. J., and Harper and McDonald, Js.

---

442

Argued September 25, 2007—officially released May 6, 2008

*Mark Diamond*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Jamal Bazemore, appeals from the judgments of conviction, rendered after a jury trial, of three counts of robbery in the first degree as an accessory in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8 (a), and two counts of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a). The defendant was charged in two separate, long form informations. One information charged the defendant in two counts relating to a robbery that occurred at a Kentucky Fried Chicken fast food restaurant (KFC) in West Hartford on or about September 15, 2003. The other information charged the defendant in three counts relating to robberies that occurred at a CVS Pharmacy (CVS) in Hartford on or about October 1, 2003. On the state's motion, the court consolidated the cases against the defendant with the cases of Jordi

Kerr and Ronnie Smith for both robberies. Subsequently, the cases were tried to the jury, and the defendant was found guilty on all charges. On appeal, the defendant claims that the trial court improperly (1) instructed the jury regarding (a) accomplice testimony and (b) notetaking, (2) violated his right against double jeopardy, (3) denied his motions for judgments of acquittal when the record lacked sufficient evidence to support his convictions, and (4) deprived him of due process and his right to a fair trial by commenting on other uncharged crimes during sentencing. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On September 15, 2003, the defendant, Kerr, Negus Jones and Smith were in a black 1998 Nissan Maxima that the defendant had stolen on September 14, 2003, on Cornwall Street in Hartford to use in a robbery and to abandon later. The four men decided to commit a robbery at a KFC on New Britain Avenue in West Hartford. Upon arriving at the KFC during business hours, shortly after 11 p.m., the men agreed that the defendant would remain in the car while Smith, Jones and Kerr would enter the restaurant. The three men, who were wearing hooded sweatshirts, face coverings and gloves, entered the restaurant carrying handguns. Smith wore a white "Jason mask."[1] There were no customers in the KFC at the time. After the men entered the restaurant, Smith approached the assistant manager, Vivette Wright-Wilson, who had seen their black car approach near the doorway, and ordered her to empty her pockets. Wright-Wilson gave Smith her money, $22. Jones approached another assistant manager, Mark Hamilton, and, at gunpoint, compelled him to open the cash register. After Hamilton opened the register, Jones removed all of the money. As Smith

---

[1] A "Jason mask" is a white hockey mask similar to that worn by the character "Jason" in the "Friday the Thirteenth" horror movie series.

and Jones collected the money, Kerr kept lookout over everybody in the KFC and made sure nobody left the premises. Later, Smith approached Hamilton and threatened to shoot him if he did not open a second cash register. After Hamilton opened the second register, Smith took the money and immediately exited the restaurant with Jones and Kerr. After the robbery, Hamilton pushed a panic button to contact the West Hartford police.

Upon leaving the store, the men got back into the stolen Maxima driven by Bazemore and turned left onto New Britain Avenue and then took an immediate right turn onto Hollywood Avenue. At that time, Carol Kinnane was walking down Stanwood Avenue and observed a black Nissan Maxima without lights driving along Hollywood Avenue. After the car stopped on a side street out of Kinnane's sight, Kinnane heard doors closing and heard several people running toward her. Kinnane then saw four men, one of whom was wearing a white mask, run around the corner of Stanwood Avenue. The man in the white mask said it was a "rush," and all four got into Smith's car, a gray and red Mercury Sable, and drove away. The four men had parked the car on Stanwood Avenue earlier that night for use after the robbery. After the men drove away, Kinnane walked to the Maxima, which still had the motor running, to determine if anyone injured was in the vehicle. Then, at Kinnane's request, a neighbor called the police, who immediately responded.

The four men took Smith's car to the defendant's house on Cornwall Street in Hartford, where they changed their clothing and equally divided the money from the robbery. The defendant remained at his house while Smith, Jones and Kerr left in Smith's car. Approximately two hours after the KFC robbery, Paul Cicero, a Hartford police officer, observed a gray and red Mercury Sable speeding southbound on Maple Avenue. Cicero, who was aware that a similar vehicle had been

used in the KFC robbery earlier that night, stopped the car after a brief chase. Before Cicero could exit his cruiser, however, Jones, the driver of the car, fled through a backyard, and Smith, who was in the backseat, got into the driver's seat. With his gun drawn, Cicero stopped Smith and Kerr but was unable to stop Jones. Thereafter, Smith and Kerr were detained until a West Hartford police officer arrived at the scene with KFC employees Hamilton and Rudolf Gordon. Because the witnesses from the KFC could not positively identify either Smith or Kerr as the masked men who had participated in the robbery, the two men were not arrested that night. Kinnane, however, identified Smith's car as the car that she had seen earlier that night on Stanwood Avenue.

Approximately two weeks later, on October 1, 2003, the defendant stole a 1996 dark green Nissan Maxima, again on Cornwall Street, to commit another robbery. The defendant, Kerr, Jones and Smith drove in that car to a CVS on Blue Hills Avenue in Hartford, where they all had agreed to commit an armed robbery. After arriving at the store, the defendant remained in the car with Kerr, whose gun had been stolen, as Smith and Jones entered the CVS armed with pistols at about 8 p.m. during business hours. Once inside the store, Smith and Jones covered their faces with T-shirts. Jones immediately went to the cash register where he encountered the store clerk, Nichole Smalls, who was Smith's sister. At gunpoint, Jones demanded money from the registers. While Jones collected the money from Smalls' register, Smith stopped three customers at gunpoint: Chayra Rodriguez; her sister, Jasmine Rodriguez; and Jasmine Rodriguez' eighteen month old son, Brian Harara. Smith ordered the women to give him all of their money. Chayra Rodriguez and Jasmine Rodriguez then gave Smith their money after Smith threatened to shoot Harara as he held a gun to the child's head. After taking

the money, Smith and Jones left the store and got back into the Maxima to join the defendant and Kerr. With the defendant driving, they left the scene. The four men later abandoned the Maxima on Colebrook Street near Cornwall Street in Hartford and went to the defendant's nearby residence to split the proceeds equally and to change clothing.

Both robberies were recorded by store surveillance cameras.

After the completion of the presentation of evidence by the state, the defendant moved for judgments of acquittal on all charges. The court denied the motions. After the jury found the defendant guilty of all charges, the court sentenced the defendant to twenty years of imprisonment, execution suspended after sixteen years, and four years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court's final jury instructions were improper because they deprived him of his constitutional right to a fair trial. The defendant contends that the court improperly instructed the jury in its final charge regarding accomplice testimony and, also, in its preliminary and final charges regarding juror notetaking. The defendant failed to preserve these claims by submitting a request to charge, taking an exception to the charge or by objecting to the instructions given before the trial.[2] At the conclusion of evidence, the court, which had furnished counsel with a written proposed charge, held a charging conference with counsel and entertained additional written and oral requests to charge. Counsel for the defendant stated on the record that he had nothing to add or to subtract

[2] Before the presentation of evidence began, the court instructed the jury as to notetaking.

and had no disagreement with the court's summary of the charging conference. The defendant now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, a "defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. In considering these claims, we may "respond to the defendant's claim by focusing on whichever [*Golding*] condition is most relevant in the particular circumstances." Id., 240.

A

The defendant first claims that the court violated his constitutional right to a fair trial by effectively instructing the jury that Jones' testimony was reliable instead of inherently suspect. The defendant claims that this alleged impropriety deprived him of his right to a fair trial under both the federal and state constitutions.[3] The defendant further claims that the court's comment

[3] The defendant invokes both the federal and state constitutions in support of his claim. The defendant, however, has failed to provide us with an independent analysis of his claim under the constitution of Connecticut. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue." (Internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 592 n.12, 916 A.2d 767 (2007).

was harmful because Jones' testimony was central to the state's case against the defendant.

The following additional facts and procedural history are necessary for our resolution of the defendant's claim. At trial, Jones testified for the state. Before testifying as to his involvement with the defendant, Kerr and Smith in both robberies, Jones acknowledged that he had entered into a plea agreement with the state in exchange for his cooperation in the criminal prosecutions against his confederates. After agreeing to cooperate with the state, Jones testified that the defendant had been the driver of stolen Maximas used at the scene of the KFC and the CVS robberies.

In its final charge to the jury, the court stated: "An accomplice's testimony is an admission by him against his own natural interest in not incriminating himself, and, therefore, it may itself be evidence of his testimony's reliability." The court also instructed the jury as follows: "A certain witness, by his own testimony, participated in the criminal conduct charged by the state in this case. He is what the law calls an accomplice. In weighing the testimony of the accomplice who was a self-confessed criminal, you must consider that fact. All else being equal, it may be that you would not believe a person who has committed a crime such as this as readily as you would believe a person with good character.

"The amount of moral wrong involved in the participation of a witness in the crimes should be weighed. Also, in weighing the testimony of an accomplice who has not yet been sentence[d] or whose case has not yet been disposed of, you should keep in mind that he may, in his own mind, be looking or hoping for some favorable treatment in the sentence or disposition of his own case and that, therefore, he may have an interest in the outcome in this case [and] that his testimony

may have been colored by that fact. Therefore, the jury must look, with particular care, to the testimony of an accomplice and scrutinize it very carefully before [the jury] can accept it." The court further instructed the jury: "It's for you, the jury, to decide what credibility you will give to a witness who had admitted his involvement in criminal wrongdoing, whether you believe or disbelieve the testimony of a person who, by his own admission, has committed the crimes charged by the state. Like all other questions of credibility, this is a question you must decide based on all the evidence presented to you."

Although the record before us is adequate to review the defendant's claim, our Supreme Court previously has recognized that "an instructional error relating to general principles of witness credibility is not constitutional in nature." *State* v. *Patterson*, 276 Conn. 452, 471, 886 A.2d 777 (2005); *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997). In *State* v. *Boles*, 223 Conn. 535, 551 n.7, 613 A.2d 770 (1992), our Supreme Court noted that the failure to give any accomplice instruction is not constitutional error. Accordingly, we conclude that the defendant's claim fails under the second prong of *Golding* because it is not of constitutional magnitude.

## B

The defendant claims that the court improperly instructed the jury regarding notetaking before and during the trial and, in so doing, deprived him of his right to a fair trial.

The defendant has constructed this claim from several portions of the court's instructions to the jury on notetaking. In making introductory remarks to the jury, the court explained to the jurors that they should not rely on the other jurors' notes. The court further cautioned that "[e]verything that is testified to in the case

is recorded" and that there was no reason to take "verbatim notes." In its final charge to the jury, the court reiterated its earlier warnings as follows: "Your notes are merely aids to your memories and should not be given precedence over your independent recollection of the evidence. A juror who has not taken notes should rely on his or her recollection of the evidence and should not be influenced by another juror's notes."

In his brief, the defendant argues that these instructions do not comport with *Esaw* v. *Friedman,* 217 Conn. 553, 586 A.2d 1164 (1991), or *State* v. *Mejia,* 233 Conn. 215, 658 A.2d 571 (1995). In *State* v. *Mejia,* supra, 215, our Supreme Court noted that, after a trial court has decided to permit the jury to take notes, the court "should instruct the jurors that their notes are merely aids to their memories and should not be given precedence over their independent recollection of the evidence, that a juror who has not taken notes should rely on his recollection of the evidence and should not be influenced by the fact that other jurors have done so, and that they should not allow their notetaking to distract them from paying proper attention to the evidence presented to them." (Internal quotation marks omitted.) Id., 235–36.

Because the defendant failed to preserve this issue for our review, he seeks review under *State* v. *Golding,* supra, 213 Conn. 239–40. "Under prong three of *Golding,* a challenged jury instruction constitutes a clear constitutional violation that [unmistakably] deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction. . . . The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of

statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Batista*, 101 Conn. App. 623, 631–32, 922 A.2d 1116, cert. denied, 284 Conn. 918, 933 A.2d 721 (2007). "An accurate jury instruction cannot be the basis for a showing that the defendant was clearly deprived . . . of a fair trial." (Internal quotation marks omitted.) *State* v. *Sanko*, 62 Conn. App. 34, 40–41, 771 A.2d 149, cert. denied, 265 Conn. 905, 772 A.2d 599 (2001).

Having considered the court's jury instructions regarding notetaking in their entirety, we conclude that the court correctly charged the jury regarding notetaking in accordance with *State* v. *Mejia*, supra, 233 Conn. 215.[4] In reaching this conclusion, we note that our

[4] In its preliminary jury instructions, the court instructed the jury regarding notetaking as follows: "I realize that you all got your notebooks, and you're free to take notes. . . . Your notes are just aids to your memories. If you don't take notes, don't rely on anyone else's notes. Everything that is testified to in this case is recorded. If you have questions during jury deliberations about what was testified to, you just send me a note and we play it again. Okay? So, there's no reason for a jury to ever disagree as to what the testimony was. Whether you believed it or not, how it fits into the scheme of the law, theory of the state or theory of the defense, that you may have to wrestle with. But what was said should be no problem. So, you don't—certainly don't need detailed—I mean, verbatim notes."

In its final charge to the jury, the court instructed as follows: "Your notes are merely aids to your memories and should not be given precedence over your independent recollection of the evidence. A juror who has not taken notes should rely on his or her recollection of the evidence and should not be influenced by another juror's notes."

Supreme Court has approved instructions on notetaking substantially similar to the court's instruction in the present case. See id., 235–36. Because our review of the record fails to reveal any impropriety, the jury instruction did not "clearly [deprive] the defendant of a fair trial . . . ." *State* v. *Golding,* supra, 213 Conn. 240. Accordingly, the defendant's claim fails to meet the third prong of *Golding.*

## II

The defendant claims that counts one and two of the long form information in the KFC case, which alleged that he had committed robbery and conspiracy to commit robbery as an accessory at the KFC, and counts one and three of the long form information in the CVS case, which charged the defendant with robbery as an accessory and conspiracy to commit robbery at the CVS, violated his federal and state constitutional protections against double jeopardy. Alternatively, the defendant argues that these informations were duplicitous and, therefore, deprived him of notice and violated his right to be free of double jeopardy.

## A

The defendant claims that the two informations violated his constitutional protections against double jeopardy. Specifically, the defendant contends that "[b]y failing to identify the person(s) robbed, the state can charge [the defendant] with robbing other people who were present in the KFC and [the] CVS in the future, which may or may not duplicate his conviction . . . ."[5]

---

[5] Our Supreme Court has held that "the plain language of [General Statutes] § 53a-133 clearly mandates punishment for each and every robbery of each and every person, irrespective of whether the robbery was spatially linked with another robbery." *State* v. *Lytell,* 206 Conn. 657, 667, 539 A.2d 133 (1988). "Therefore when two or more persons are the victims of a single episode there are as many offenses as there are victims." (Internal quotation marks omitted.) *State* v. *D'Antonio,* 274 Conn. 658, 717, 877 A.2d 696 (2005).

In response, the state argues that because a second prosecution has not been commenced for crimes committed involving the other individuals present during the KFC and CVS robberies, the issue is not yet ripe for adjudication. We agree with the state.

"In light of the rationale of the ripeness requirement, to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . we must be satisfied that the case before the court does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *State* v. *Campbell*, 84 Conn. App. 648, 650, 854 A.2d 813, cert. denied, 271 Conn. 940, 861 A.2d 515 (2004). "If an issue is not yet ripe for adjudication, this court lacks subject matter jurisdiction to afford it consideration." Id.

Here, we conclude that the defendant's double jeopardy claim is not ripe and that we lack jurisdiction to consider the claim.

B

The defendant next argues that he was deprived of his constitutional right to fair notice of the charges against him in violation of the sixth amendment and article first, § 8, of the Connecticut constitution. The defendant claims that the informations were duplicitous because they did not specify the victims of the robbery and conspiracy to commit robbery counts. More specifically, the defendant argues that the informations violate the duplicity doctrine because "they could include more than one offense involving the robbery of any of [the] several employees . . . ."

The following additional information is relevant to our review of the defendant's claim. On March 4, 2005, the state filed a long form information in Docket No.

CR-03-576134 outlining the crimes that the defendant allegedly committed in conjunction with the CVS robbery. Counts one and three of that information did not specify the victims of the robbery or the conspiracy to commit robbery charges at the CVS. Count two did identify Jasmine Rodriguez as the robbery victim at the CVS. On March 9, 2005, the state filed a long form information in Docket No. CR-03-576723 setting forth the crimes that the defendant allegedly committed in relation to the KFC robbery. Counts one and two did not specify the victims of the robbery or the conspiracy to commit robbery charges at the KFC.

The record reveals that the defendant never filed a bill of particulars before or at trial as to either information. The defendant thus did not preserve this issue at trial, and the claim he now makes was not submitted to the court for its determination. Accordingly, the defendant seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude, however, that the defendant cannot prevail under *Golding* because he waived this claim by failing to seek a bill of particulars. See *State* v. *Young*, 191 Conn. 636, 646, 469 A.2d 1189 (1983); cf. *State* v. *Carbone*, 172 Conn. 242, 258, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977). "A constitutional right that has been waived at trial cannot be resurrected successfully on appeal . . . by invoking the *Golding* doctrine." *State* v. *McDaniel*, 104 Conn. App. 627, 632, 934 A.2d 847 (2007), cert. denied, 285 Conn. 912, 943 A.2d 471 (2008), citing *State* v. *Fabricatore*, 281 Conn. 469, 915 A.2d 872 (2007).

III

The defendant next claims that the evidence was insufficient to support the jury's verdicts of guilty. We do not agree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402, 902 A.2d 1044 (2006).

The record reveals that Jones testified as a witness for the state. Jones testified that on or about September 15 and October 1, 2003, he, the defendant, Kerr and Smith needed money and agreed to steal a Nissan Maxima and to first rob the KFC and later the CVS. Jones testified that the defendant stole both vehicles. Jones testified that on September 15, 2003, the defendant remained in the stolen Maxima while he, Kerr and Smith each entered the KFC armed with a pistol. After arriving at the KFC in the stolen Maxima driven by the defendant, Jones testified that Smith had concealed his face with a "Jason mask" and had entered the store with an automatic weapon. Jones, whose face also was covered and who also had a pistol, testified that he went to the cash registers and demanded money while Smith looked for the manager. Kerr, who also had his face concealed, entered the establishment with a pistol to act as a lookout and to ensure that no one left the restaurant during the robbery. Thereafter, the three men left in the stolen Maxima parked at the entrance to the restaurant. Jones stated that after the men completed the robbery, the defendant drove them to Hollywood Avenue, where they discarded the stolen Maxima and where all four drove away in Smith's Mercury Sable. Jones testified

that the men then drove to the defendant's house and equally divided the proceeds of the robbery.

After leaving the defendant at his residence, Smith, Kerr and Jones left in Smith's car and were later stopped by the police. Jones testified that he escaped capture by leaping from Smith's car and that Kerr and Smith were held by the police. Jones testified that on October 1, 2003, the defendant again agreed to serve as the driver of the getaway car during the CVS robbery. Jones testified that during the CVS robbery, Smith wore a T-shirt over his face and carried the same pistol that he had used during the KFC robbery. Jones testified that before the CVS robbery, Smith had discarded his "Jason Mask" after he saw himself wearing the mask on the television news. Jones testified that only he and Smith entered the CVS because Kerr, who remained with the defendant in the stolen Maxima, no longer had a gun. Jones also testified that he went straight to a register and that Smith went to look for the manager. While testifying, Jones referred to the KFC and the CVS security videotapes. There was additional evidence at trial that, at the KFC robbery scene, Smith took money at gunpoint from a cash register and from an employee. While in the CVS, Smith took money at gunpoint from customers, and Jones took money from a cash register after using a handgun pointed at an employee.

In his brief, the defendant claims that Jones provided the only evidence that linked him to the crimes. In support of this claim, the defendant contends that because Jones' testimony was "so suspect because of the unbelievably fantastic plea deal he made with the [state]," the jury's reliance on such testimony rendered his conviction "insufficient . . . as a matter of fact and as a matter of law."[6] In essence, the defendant requests

---

[6] During trial, Jones testified that in exchange for testifying against the defendant, Smith and Kerr, the state would recommend that Jones receive a sentence of twenty years incarceration, with execution of the sentence suspended after four and one-half years for a number of armed robberies.

this court to declare Jones' testimony not credible as a matter of law.

The defendant's challenge to the sufficiency of the evidence is a challenge to the credibility of Jones' testimony, which provided a sufficient evidentiary basis for the convictions. We have repeatedly held that "[t]his court will not revisit credibility determinations. Whether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to . . . determine the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Falcon*, 90 Conn. App. 111, 132, 876 A.2d 547, cert. denied, 275 Conn. 926, 883 A.2d 1248 (2005). Testimony is not rendered inadmissible merely because it is uncorroborated or has inconsistencies. Id.; see also *State* v. *Holmes*, 94 Conn. App. 494, 503 n.4, 892 A.2d 969, cert. denied, 278 Conn. 908, 899 A.2d 35 (2006).

We conclude that the defendant has not demonstrated that it was unreasonable for the jury to have relied on Jones' testimony. "[T]he question of [the] identify of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve. [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Felder*, 99 Conn. App. 18, 24, 912 A.2d 1054, cert. denied, 281 Conn. 921, 918 A.2d 273 (2007).

In the present case, the defendant, through cross-examination and argument, attempted to discredit the

testimony of Jones. The arguments raised by the defendant on appeal with regard to Jones' credibility are arguments that the defendant properly raised before the jury and which were properly considered by the jury in determining what weight to afford Jones' testimony. See *State* v. *Osoria*, 86 Conn. App. 507, 515, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005). Accordingly, we conclude that Jones' testimony was properly before the jury, and, when considered in light of the other testimony introduced at trial, provided an evidentiary basis for the defendant's conviction. There was testimony from other witnesses that four men were involved in the KFC robbery after the Maxima was abandoned near the KFC and that Smith's automobile, Smith himself, Kerr and a third person, who had escaped,[7] were involved in the KFC robbery. Testimony was also introduced that established that shortly before the robberies, both Maxima vehicles were stolen from Cornwall Street in Hartford, the street where the defendant resided. There was additional testimony that one stolen Maxima was recovered near the KFC where Smith's car, which was impounded by the police that night, was observed leaving the area, and that the stolen Maxima used during the CVS robbery was recovered in close proximity to the defendant's house.

## IV

Finally, the defendant claims that the sentencing court deprived him of his right to a jury trial and proof beyond a reasonable doubt under the federal and state constitutions by improperly considering several uncharged crimes that were referenced in his presentence investigation report. Having failed to preserve this claim, the defendant seeks review under *State* v.

---

[7] During his testimony, Jones admitted leaving Smith's car and escaping from the police after the KFC robbery.

*Golding*, supra, 213 Conn. 239–40, or, in the alternative, under the plain error doctrine.[8] Although the defendant's claim meets *Golding*'s first two prongs, we conclude that his claim fails because he cannot satisfy the third prong by establishing that a constitutional violation clearly exists.

"As a general matter, a trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters. On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused. . . . Due process requires, however, that information be considered only if it has some minimal indicium of reliability. . . . A court should refrain from comments that find no basis in the record. Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence." (Citation omitted; internal quotation marks omitted.) *State* v. *Dudley*, 68 Conn. App. 405, 426, 791 A.2d 661, cert. denied, 260 Conn. 916, 797 A.2d 515 (2002). In the present case, the defendant made no such showing.[9]

---

[8] See Practice Book § 60-5. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Solman*, 67 Conn. App. 235, 239–40, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002).

[9] In reviewing this claim, we note that the defendant's reliance on *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), *Blakely* v. *Washington*, 542 U.S. 296, 299–300, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *United States* v. *Booker*, 543 U.S. 220, 226–27, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), cases that involved sentence enhancement statutes and federal sentencing guidelines, is misplaced. In this case, the court sentenced the defendant to twenty years of imprisonment, suspended after

During sentencing, the court stated that the most important factors that it considered were the two robberies for which the defendant had been convicted. In arriving at a sentence, the court considered carefully the nature of crimes involving firearms, the monetary losses of the retail stores and the status of the victims as either employees or customers who happened to be on the premises at the time of the robberies. The court also considered the effect of the robbery on an employee who had left her job in an effort to avoid future danger. Consideration was also given to the defendant's previous record and his failure to comply with the conditions of his probation. We note that the court, in its sentencing remarks, did refer to other uncharged robberies involving the defendant and Jones, which, the court acknowledged, factored into its consideration of the defendant's sentence in a minor way. These robberies, however, were a part of Jones' plea agreement, which had been admitted into evidence. Because the record reveals that the court properly relied on the evidence presented at trial in imposing the sentence, the defendant cannot prevail on his unpreserved constitutional challenge. See id., 425.

Moreover, having concluded that the court properly considered the evidence presented at trial in imposing the defendant's sentence, plain error review is inappropriate here because the claimed error is not so obvious that "it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) See *State* v. *Solman*, 67 Conn. App. 235, 239, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002).

The judgments are affirmed.

In this opinion the other judges concurred.

---

sixteen years, with four years of probation. In so doing, the court imposed a sentence that is provided for under General Statutes § 53a-35a.