******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JESSIE L. C.[1]
(AC 35388)

DiPentima, C. J., and Gruendel and West, Js.

*Argued October 17, 2013—officially released February 18, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Kavanewsky, J.)

*Katherine C. Essington*, assigned counsel, for the

appellant (defendant).

*Adam E. Mattei*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Jessie L. C., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (E), and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that the trial court (1) violated his sixth amendment right to confrontation by improperly restricting his cross-examination of the complaining witness, and (2) violated his constitutional right to notice and a unanimous verdict by using a duplicitous amended information. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant is the uncle of the victim, N, and her older brother, K. The defendant is also the adoptive father of S, who is N and K's younger half sister. N, K, and S lived with the defendant and his wife, B, on the second and third floors of a two-family home. On the second floor, N and S shared a bedroom, and the defendant and B slept in the dining room, which they had converted into a bedroom. K's room was on the third floor.

At some point, the defendant and B separated and B moved into the apartment located on the first floor of the house. Accordingly, N, K, and S were living solely with the defendant. The first incident of sexual abuse occurred when N was ten years old. One day, the defendant awoke N from a nap and told her to go sleep in his bed. After falling asleep in the defendant's bed, N woke up with the defendant's penis inside of her vagina. The defendant apologized and told N that he was dreaming and thought that she was B. He instructed N not to tell anyone about the incident.

When N was eleven and twelve years old, the defendant sexually assaulted her about two to three times per week, although he did not penetrate her again until she was thirteen years old. The majority of incidents occurred at nighttime; however, the abuse sometimes occurred during the daytime prior to the defendant's leaving to work the night shift. Generally, the defendant would make sure that S and K were distracted by television or video games, and would then tell N that he needed help relieving his stress. N would pull down her pants and underwear and lie down on the defendant's bed. The defendant would rub his penis against the outside of her vagina until he ejaculated.

When N was approximately twelve or thirteen years old, she began sleeping in the defendant's room every night—the defendant had told her that she could no

longer share a bed with S because the bed squeaked and disturbed the downstairs neighbors. When N was between the ages of thirteen and sixteen years old, the defendant sexually assaulted her every day, and sometimes multiple times a day. During this three year time period, the assault largely consisted of vaginal penetration, but in some instances, the defendant would also put his mouth on N's breasts and nipples. In an effort to escape the sexual abuse, N frequently ran away from home. The last instance of sexual assault occurred when N was sixteen years old, the day before she and K left for a Christian summer camp in Pennsylvania.

N disclosed the sexual abuse on two occasions. Her first disclosure was made in June, 2009, to a childhood friend, J, with whom she recently had reconnected. N called J on the telephone and told him about the sexual assault. He advised her to stand up for herself. The second disclosure occurred in August, 2009, while N was attending a Christian summer camp. During a group session pertaining to physical and sexual abuse, N stood before a group of approximately thirty girls and counselors and disclosed that the defendant physically, mentally, and sexually abuses her. She subsequently discussed the abuse with a camp counselor and other camp leaders. Also, on the final day of camp, she disclosed the abuse to the entire camp, including K, in her closing "testimonial." When N returned from camp, members of the Department of Children and Families (department) intervened and placed her and her siblings in the temporary custody of a family friend. Thereafter, N was interviewed by a police officer, and ultimately placed in the custody of B, along with S. K lived with another family before returning to live with the defendant.

The defendant was arrested on January 14, 2010, and charged with one count of sexual assault in the first degree, three counts of sexual assault in the second degree, two counts of sexual assault in the fourth degree, and one count of risk of injury to a child. Following a five day trial, the jury returned a verdict of guilty on all counts. The court accepted the verdict and sentenced the defendant to a total effective term of twenty-five years imprisonment, execution suspended after eighteen years, followed by twenty years of special probation. This appeal followed. Additional facts will be set forth as they pertain to each claim.

I

The defendant first claims that the court violated his sixth amendment right to confrontation by improperly restricting his cross-examination of N with respect to her relationship with J, and her truthfulness toward various parties following her allegations of sexual assault. Specifically, the defendant argues that he was unlawfully restricted from cross-examining N about the lies she purportedly told to her department caseworker

with respect to her school grades, relationship with J, and computer usage. He also claims that N lied to B with respect to J, and to the police regarding an incident wherein N was locked out of B's house. Consequently, the defendant contends that he was deprived of his constitutional right to impeach N's credibility and to expose her alleged motive to fabricate the sexual assault allegations—namely, revenge for the defendant's refusal to allow her to date J. We disagree with the defendant.

The following additional procedural history and facts, as the jury reasonably could have found them, are relevant to our disposition of this claim. On direct examination, N testified that J, who is four years older than her, was a childhood friend who lived across the street from her when she was about five years old. When J's mother was at work, the defendant would often baby-sit J along with N and K. Although they lost touch over the years, N and J reconnected when N was sixteen years old. In June, 2009, N called J and told him that the defendant "has sex with me all the time." J advised N to stand up for herself.

At approximately that time, N asked the defendant for permission to date J, and the defendant said no. On one occasion in July, 2009, N saw J at a parade she was attending with her siblings, and he inquired as to whether the defendant continued to sexually abuse her. When N and her siblings returned home, N's brother, K, told the defendant that N was conversing with J at the parade. Consequently, the defendant forced N to take off her belt and he beat her with it. Near the conclusion of her direct examination, N testified that she and J were romantically involved and living together, and that they had had a child together. N further testified that she was arrested on April 5, 2011, due to a fight she had had with J, and that charges against her were pending.

On cross-examination, the defendant asked N several questions pertaining to her truthfulness and her relationship with J. For example, the defendant asked N whether she was angry that the defendant would not allow her to date J, and whether she asked the department to place her with J's mother following her disclosure of sexual abuse. Additionally, the defendant asked N whether she snuck out of the defendant's house to party with friends. The defendant also asked N about several promises that she made to the defendant and had broken, including a promise not to disclose the sexual abuse, not to sneak out at night, and not to use the computer at night. Furthermore, the defendant asked N whether she was concerned that her sexual assault allegations would be disbelieved because she had a history of lying.

In addition to these and other questions intended to impeach N's credibility, the defendant asked N whether,

during the time she was living with B, following her disclosure of sexual assault, she broke B's house rules. The state objected and the jury was excused for argument on the objection. The state argued that the question was neither relevant nor probative of whether the defendant committed the crimes charged. Conversely, the defendant argued that N's anticipated answer would reveal a pattern of breaking promises, which was relevant to her credibility. The court sustained the objection, stating, "[Y]ou've elicited that [N] promised to tell the defendant that she wouldn't tell anybody about what she says was the sexual abuse. . . . You've elicited that she promised not to use the computer . . . she said, yeah, I broke that promise, too. . . . So . . . you've demonstrate[d] that she made several promises to the defendant about these things and that she didn't keep a couple of these promises. I think that's fine. I let it go in. But . . . we're not going to . . . try a case within a case about what promises she kept or didn't keep in some other household. I don't think it has any probative value. So, I'm going to sustain the objection. I think you've made your point with your initial round, but I think that once we get outside the household, I think, it becomes much less probative and collateral."

Prior to the jury's return following this ruling, the defendant proffered several questions to the court regarding N's truthfulness and her relationship with J. The court determined that several of these questions were permissible. Accordingly, the defendant was permitted to ask whether: (1) N ran away from B's house on two occasions, and whether she was with J during those times; (2) pursuant to S's complaint to the department about being spanked by the defendant, N told a department caseworker that she had not been physically abused by the defendant; (3) N told the defendant she lost a camera he had lent her for summer camp, and whether a department caseworker later found the camera in N's backpack.

The court determined, however, that several proffered questions were impermissible because they were irrelevant and their prejudicial effect outweighed their probative value. The precluded questions included whether: (1) N lied to B and the department about taking the bus to and from work, when in fact, J was transporting her; (2) J would pick N up from school shortly after the start of the school day and drop her off before a department worker would arrive to pick her up; (3) N lied to a department worker about calling her caseworker, when in fact she was calling J; (4) N lied to a department caseworker about getting good grades when she was failing the majority of her classes; (5) N told her foster family that a friend gave her twenty dollars, when in fact, her friend gave her three hundred dollars; and (6) N lied to the police about an incident that occurred six weeks after her disclosure of sexual assault, when she told them that she was locked out

of B's house because she was with a girlfriend, when in fact, she was with J.

The court stated that because this line of questioning pertained to events that purportedly occurred following N's displacement from the defendant's household, they did not have any probative value and were likely to confuse the jury in its determination of whether the defendant committed the crimes charged. The court did, however, allow the defendant to question N about whether, following her disclosure of sexual assault, she was always truthful to people in other households and the police, but stated that the defendant would not be allowed further inquiry into N's responses because the questions pertained to "very remote collateral, nonprobative events."

As previously indicated, the defendant contends on appeal that the court violated his sixth amendment right to confrontation by deeming irrelevant several proffered questions intended to impeach N's credibility and expose her purported motive to fabricate the sexual assault allegations against him. The following legal principles guide our analysis of the defendant's claim. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Although it is within the trial court's discretion to determine the extent of cross-examination and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements [of the confrontation clause] of the sixth amendment. . . .

"[T]he confrontation clause does not [however] suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination . . . [or] to present every piece of evidence he wishes. . . . To the contrary, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Thus, [i]f the proffered evidence is not relevant . . . the defendant's right to confrontation is not affected, and the evidence was properly excluded. . . . [W]e first review the trial court's evidentiary rulings

. . . if premised on a correct view of the law . . . for an abuse of discretion. . . .

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did. . . . If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 8–11, 1 A.3d 76 (2010); see *State* v. *David N.J.*, 301 Conn. 122, 132–33, 19 A.3d 646 (2011).

We conclude that the court's limitation of the defendant's cross-examination of N did not constitute an abuse of discretion. The court engaged in a discerning analysis of the defendant's proffered line of questioning, disallowing only those questions pertaining to events allegedly occurring after N's disclosure of sexual abuse and her consequent removal from the defendant's home. The court reasonably could have determined that, given the temporal nature of the precluded questions with respect to the crimes charged, such questions were collateral, nonprobative, and likely to confuse the jury. Moreover, contrary to the defendant's contentions, he was afforded the opportunity to conduct a comprehensive cross-examination of N's credibility and alleged motive. The court permitted the defendant to inquire into whether N was angry that the defendant would not allow her to date J, whether she asked the department to be placed in the custody of J's mother, and whether she ran away from B's house, where she was not being abused, to be with J. Additionally, the court allowed the defendant to conduct a limited cross-examination into N's truthfulness with respect to whether, following her disclosure of sexual assault, she ever lied to B, members of other households, or the police.

Once again, "[t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 298 Conn. 9. Because the proffered evidence was reasonably excluded in accordance with the rules of evidence, the court neither abused its discretion nor violated the defendant's right to confrontation.

II

The defendant next claims that the court violated his fifth amendment right to due process and his sixth amendment right to notice by improperly permitting the state to charge him on the basis of a duplicitous

amended information. In particular, the defendant contends that the court should have required the state to set forth the specific facts underlying the identical counts of sexual assault in the second and fourth degree in order to apprise the defendant of the charges against him. Additionally, the defendant claims that the court violated his fifth amendment right to a unanimous verdict by failing to instruct the jury that its verdict must be unanimous with respect to the specific facts supporting each count for which it returned a guilty verdict.

As a preliminary matter, the defendant concedes that he did not preserve these claims on appeal. The defendant did not file a motion for a bill of particulars or a written request asking the state to specify the facts underlying the contested counts. See Practice Book §§ 41-5, 41-20 and 36-19. The defendant accordingly seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] We will review these claims because the record is adequate for review and they are of constitutional magnitude. See *State* v. *Marcelino S.*, 118 Conn. App. 589, 594, 984 A.2d 1148 (2009) (applying *Golding* review to unpreserved duplicity claim), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010). We conclude, however, that the defendant's claims fail under the third prong of *Golding*. The following procedural history and facts, as the jury reasonably could have found them, are relevant to our review of this claim.

The state's amended information charged the defendant, in pertinent part, with three identical counts of sexual assault in the second degree, alleging that the assault occurred "on diverse dates between 2002 and prior to July of 2009 . . . ." It additionally charged the defendant with two identical counts of sexual assault in the fourth degree, alleging that the assault occurred "on diverse dates between 2002 and July of 2009 . . . ."

At trial, N gave a detailed account of several specific incidents of sexual assault. She testified that the defendant often required N to return home early from playing in the park with her siblings, at which time he would sexually assault her. Additionally, she testified about an instance when she was sexually assaulted in S's bed and the defendant broke the bed frame. Further, N testified as to a few instances where S had cracked open the defendant's bedroom door while he was sexually assaulting N. On those occasions, the defendant responded by covering himself and N with blankets, or by running to close the door before S could enter the room or witness the assault. N also testified that the sexual assault often occurred when the defendant sent K to run errands at Walgreens, Burger King, or a nearby corner store.

On cross-examination, the defendant questioned N regarding an incident of alleged anal sexual assault. The defendant elicited testimony that, pursuant to her interview with a police officer, N disclosed that she

had a scar on her anus due to an instance of anal sexual assault by the defendant. Thereafter, during the defendant's cross-examination of Janet Murphy, a pediatric nurse practitioner who conducted a physical examination of N, the defendant elicited that Murphy did not detect any anal scarring. During closing argument, the defendant argued that this lack of physical evidence impugned N's credibility.

In its charge to the jury, the court gave only one instruction with respect to the three identical counts of sexual assault in the second degree, but stated that the jury must consider each count separately. The court stated that the state "must prove beyond a reasonable doubt, first, sexual intercourse took place between the defendant and [N] and, second [N] was less than eighteen years old and the defendant was her guardian or was otherwise responsible for the general supervision of her welfare. If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of sexual assault in the second degree as to count two, three, or four, then you should find the defendant guilty as to that particular count. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements as to count two, three, or four, then you shall find the defendant not guilty as to that particular count."[3]

Similarly, with respect to the two identical counts of sexual assault in the fourth degree, the court delivered only one jury instruction but told the jury that it must consider each count separately. It stated that the state "must prove beyond a reasonable doubt, first, the defendant intentionally subjected the complainant to sexual contact; second, he specifically intended to obtain sexual gratification; and, third, the complainant was less than eighteen years old at the time the offense was committed and the defendant was her guardian or was otherwise responsible for the general supervision of her welfare."[4]

Additionally, the court instructed the jury that if it returned a verdict of guilty as to any or all of the counts of sexual assault in the second and fourth degree, it must complete an interrogatory regarding whether N was under the age of sixteen at the time of the offenses charged. It instructed that "[t]he interrogatory would be answered yes or no, and any answer must be unanimous." Before excusing the jury to conduct its deliberations, the court emphasized, "[w]hen you reach a verdict as to any count, it must be unanimous. All of you must agree to it whether that verdict is guilty or not guilty." Subsequently, when the jury returned its verdict, the court clerk questioned the panel as to whether its verdict was unanimous on each count and interrogatory for which it returned a guilty verdict. The panel responded, "[y]es," with respect to each count.

Our analysis begins with an examination of the

duplicity doctrine. "Duplicity occurs when two or more offenses are charged in a single count of the accusatory instrument." (Internal quotation marks omitted.) *State* v. *Marcelino S.*, supra, 118 Conn. App. 594. In this case, the defendant contends that the identical counts of sexual assault in the second and fourth degree within the amended information contained two or more offenses because each count could have been supported by various factual scenarios. See *State* v. *Bazemore*, 107 Conn. App. 441, 454–55, 945 A.2d 987 (defendant argued that long form information was duplicitous where it set forth two counts of robbery without identifying robbery victims and defendant allegedly robbed various individuals), cert. denied, 287 Conn. 923, 951 A.2d 573 (2008). However, "[i]t is now generally recognized that [a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is only duplicitous where the policy considerations underlying the doctrine are implicated." (Internal quotation marks omitted.) *State* v. *Marcelino S.*, supra, 594–95. Here, the defendant claims that the two policy considerations implicated are the policies of assuring his right to adequate notice and avoiding the risk of a nonunanimous verdict. See id. (setting forth policy considerations underlying duplicity doctrine).

In particular, the defendant argues that the amended information did not set forth the factual basis underlying each count of sexual assault in the second and fourth degree. By the defendant's account, N's testimony that the defendant assaulted her every day and sometimes multiple times a day for a period of six years amounts to approximately 7575 instances of alleged sexual assault. Moreover, the defendant asserts that there were at least eleven factual scenarios that could have supported the charges of sexual assault in the second degree. He argues that, because the state did not set forth the specific factual underpinnings of each count of sexual assault, he was unable to narrowly tailor his defense "to challenge [N's] veracity with respect to [the alleged] incidents." Specifically, the defendant argues that some of the jurors may have "disbelieved [N's] claim of anal penetration based on a complete lack of physical evidence supporting this claim, while others may have used it as a factual basis for convicting the defendant of counts two, three, or four," which alleged sexual assault in the second degree. Consequently, the defendant argues, the jury may have returned a nonunanimous verdict by agreeing that the defendant was guilty of each count, but disagreeing about which acts supported that verdict.

We first conclude that the defendant's claim that he was deprived of his constitutional right to notice fails under the third prong of *Golding*. If the defendant desired greater specificity with respect to the facts underlying each claim, then he should have filed a

motion for a bill of particulars or a written request for the facts underlying each count. See Practice Book §§ 41-5, 41-20 and 36-19. His failure to avail himself of these procedural protections constituted waiver, and thus, this claim fails under the third prong of *Golding*. See *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008) ("a constitutional claim that has been waived does not satisfy the third prong of the *Golding* test" [emphasis omitted]); *State* v. *Young*, 191 Conn. 636, 646, 469 A.2d 1189 (1983); *State* v. *Bazemore*, supra, 107 Conn. App. 454–55 (defendant waived claim that duplicitous information deprived him of constitutional right to notice where he failed to file motion for bill of particulars). We thus conclude that the defendant was not deprived of his constitutional right to notice.

We further conclude that the defendant's right to a unanimous verdict was not violated when the court failed to instruct the jury that its verdict must be unanimous as to the facts underlying each count for which it returned a guilty verdict. "Regarding a court's instruction to a jury prior to its deliberations, we have not required a specific unanimity charge to be given in every case . . . ." (Internal quotation marks omitted.) *State* v. *Senquiz*, 68 Conn. App. 571, 589, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002). "In *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), we set forth a multipartite test to determine whether a trial court's omission of a specific unanimity charge warrants a new trial. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Internal quotation marks omitted.) *State* v. *Dyson*, 238 Conn. 784, 792, 680 A.2d 1306 (1996).

"This court is required to conclude, when reviewing a court's instruction to the jury, that [t]he absence of language expressly sanctioning a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test." (Internal quotation marks omitted.) *State* v. *Senquiz*, supra, 68 Conn. App. 589; see *State* v. *Reddick*, 224 Conn. 445, 454, 619 A.2d 453 (1993); *State* v. *Cramer*, 57 Conn. App. 452, 461, 749 A.2d 60, cert. denied, 253 Conn. 924, 754 A.2d 797 (2000). Here, there is no express language in the court's jury charge sanctioning a nonunanimous verdict. Cf. *United States* v. *Gipson*, 553 F.2d 453, 458–59 (5th Cir. 1977), discussed in *State* v. *Anderson*, 211 Conn. 18, 34–35, 557 A.2d 917 (1989) (court instructed jurors that they could disagree as to particular acts constituting violation of

crimes charged and still return guilty verdict). To the contrary, the court instructed the jury that each count of sexual assault must be considered separately and independently of the other counts; that the jury must unanimously agree that each element of the crimes charged was proven beyond a reasonable doubt; and that the interrogatories for each count must be answered unanimously. Before releasing the jury into deliberations, the court emphasized that its verdict must be unanimous. Moreover, following the jury's verdict, the panel affirmed that its verdict was unanimous on each count.

Therefore, "[g]iven the court's admonitions concerning unanimity, we must presume that the jury, in the absence of a fair indication to the contrary . . . followed the court's instruction as to the law." (Internal quotation marks omitted.) *State* v. *Senquiz*, supra, 68 Conn. App. 590. Thus, we conclude that the defendant's claim fails under the third prong of *Golding* because the court did not expressly sanction a nonunanimous verdict.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] "Under the familiar principle established in *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if each of four conditions is met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Marcelino S.*, 118 Conn. App. 589, 594, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010).

[3] In another portion of the jury charge on the crime of sexual assault in the second degree, the court defined sexual intercourse as "vaginal or anal intercourse."

[4] In a separate portion of the jury charge on the crime of sexual assault in the fourth degree, the court defined sexual contact as "any contact by the defendant with the intimate parts of the complainant or contact of the intimate parts of the defendant with the complainant. Intimate parts means the genital area, groin, inner thighs, buttocks, or breasts."

[5] Even if the defendant had satisfied the threshold requirement of the *Famiglietti* test, his claim nevertheless fails under the test's first prong because case law provides that alternative means of performing unlawful sexual intercourse and sexual contact are not conceptually distinct. See *State* v. *Anderson*, supra, 211 Conn. 35 ("[t]he several ways in which sexual intercourse may be committed under General Statutes § 53a-65 [2] are only one conceptual offense"); *State* v. *Hufford*, 205 Conn. 386, 397, 533 A.2d 866 (1987) (no specific unanimity instruction required for charge of sexual assault in fourth degree); *State* v. *Griffin*, 97 Conn. App. 169, 184 n.7, 903 A.2d 253 ("alternative means of performing sexual intercourse are not conceptually distinct"), cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006); *State* v. *William C.*, 71 Conn. App. 47, 79, 801 A.2d 823 (2002) ("[t]here is no conceptually alternative theory as to how [§ 53a-73a] could be violated notwithstanding the state's presentation of evidence of two different occasions on which the defendant unlawfully touched the victim's breasts"), rev'd on other grounds, 267 Conn. 686, 841 A.2d 1144 (2004). Therefore, the court's jury instructions did not violate the defendant's right to a unanimous verdict.