## STATE OF CONNECTICUT *v.* KEVIN BAILEY
## (AC 23103)

Lavery, C. J., and West and Cretella, Js.

Argued September 15, 2003—officially released March 16, 2004

*James B. Streeto,* assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.,* senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Kevin Bailey, appeals from the judgment of conviction, rendered after a jury trial, of possession of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and conspiracy to sell marijuana by a person who is not drug-dependent in violation of

General Statutes §§ 53a-48 and 21a-278 (b).[1] On appeal, he claims that the court improperly (1) denied his motion to suppress statements he made to the police, (2) refused to charge the jury that it had to agree unanimously on the manner or method by which the offenses were committed, (3) inadequately responded to the jury's question concerning the conspiracy charge and (4) misled the jury on the state's burden of proof beyond a reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 14, 1999, a police narcotics unit executed a search and seizure warrant at the defendant's residence at 181 College Street in Stratford and found $10,340 in United States currency and $20,000 in Jamaican currency, two loaded handguns and fifteen pounds of marijuana in one pound plastic bags. The defendant was placed under arrest and read his *Miranda*[2] rights from a printed warning card. He then was taken to police headquarters where he signed and initialed a *Miranda* waiver form and answered questions regarding his involvement in drug activity.

At trial, the defendant filed a motion to suppress certain statements he made to the police, arguing that he could not read English well enough to understand the *Miranda* waiver form that he had signed and initialed. The court denied the motion. The jury convicted the defendant and this appeal followed. Additional facts will be set forth as needed.

I

The defendant's initial claim is that the court improperly denied his motion to suppress statements he had

---

[1] The jury found the codefendant, Suzette Royal, not guilty of the same offenses.

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

made to the police in the absence of adequate *Miranda* warnings. He concedes that an attack on the adequacy of the warnings was not raised at trial and therefore asks this court to review his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant argues that prior to police questioning, he was informed only of his general right to the services of an attorney, but not of his right to the presence of an attorney before and during questioning. He contends that the record establishes the absence of those specific rights from both the oral warnings and the *Miranda* waiver form. The omission of those required warnings, the defendant argues, precludes the possibility that he made a knowing and intelligent waiver of his *Miranda* rights prior to making statements to police. We disagree.

Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.

In this case, the record is inadequate to review the defendant's claim. With respect to the oral advisement of rights upon the defendant's arrest, the record does not reveal what specific rights the officer included or omitted. The officer testified that he read the *Miranda* rights from the printed warning card. That card, however, was never placed into evidence. We do not have enough facts to judge whether, as the defendant argues, the police failed to inform him adequately of his right to counsel in both the oral advisement and the written

waiver form.[3] It is not this court's function to speculate about important facts that were not raised at trial. Because the first *Golding* condition has not been met, we need not review the claim further.

## II

The defendant's second claim is that the court improperly refused to charge the jury that it had to agree unanimously on the manner or method by which the offenses were committed. He cites his statements that another individual was paying him to store the marijuana in his house[4] and argues that this alternate factual scenario required a specific unanimity instruction. We disagree.

"[A] claim bearing on the defendant's right to a unanimous verdict implicates a fundamental constitutional right to a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Tucker*, 226 Conn. 618, 645, 629 A.2d 1067 (1993). "Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In evaluating the particular charges at issue, we must adhere to the well settled rule that a charge

[3] Although the written waiver form was introduced into evidence at trial, the oral advisement is needed to gauge whether the defendant made a knowing and intelligent waiver. Even if we assume, arguendo, that the rights listed on the written waiver form were not complete, the defendant could not argue that such a deficiency, by itself, precludes a viable waiver. "The formal execution of a written waiver is not a prerequisite to a finding that there has been a knowing, intelligent and voluntary waiver by a defendant who has been advised of his rights as required by *Miranda*." *United States* v. *Bradford*, 496 F. Sup. 366, 372 (D. Conn. 1980).

[4] Special Agent Donahue Hibbert of the federal Drug Enforcement Administration testified as follows: "[The defendant] stated to me [that] the marijuana came from an individual in California named Ricky, whose last name is unknown, and Ricky would bring the marijuana to his house, and he would ask him if he could store the marijuana there. He said he did on two, three occasions, and he was paid approximately $300 for having the marijuana stored at his house."

to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view [them] as improper." (Internal quotation marks omitted.) *State* v. *Ortiz*, 79 Conn. App. 667, 674, 830 A.2d 802, cert. denied, 266 Conn. 933, 837 A.2d 806 (2003).

"[I]f the actions necessary to constitute a violation of one statute or subsection of a statute are distinct from those necessary to constitute a violation of another, then jurors who disagree on which one the state proves cannot be deemed to agree on the . . . conduct the defendant committed. . . . Under such circumstances, the jurors should be told that they must unanimously agree on the same alternative." (Internal quotation marks omitted.) *State* v. *Mancinone*, 15 Conn. App. 251, 273, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). A specific unanimity instruction is required, however, only "where the particular count under consideration by the jury is based on multiple factual allegations which amount to multiple statutory subsections or multiple statutory elements of the offense involved." Id., 274.

In this case, the defendant was charged, in part, with violation of § 21a-278 (b).[5] In closing argument, the state

[5] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, *possesses with the intent to sell* or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a

asserted that the evidence established the defendant's role in a drug sale operation because he *knowingly possessed marijuana with the intent to sell it.* The state further argued that although it was unclear what precise role the defendant played in the operation, his purported act of holding the drugs for another was enough to satisfy those elements: "[The defendant] claims he was holding [the marijuana] for somebody named Jimmy[6] from California. . . . In that alone he admits to the elements of the crimes right there. Right there alone. *Knowing possession of contraband with intent to sell.* And why is it the intent to sell? Because he says I'm holding it for somebody, which means I'm going to give it to him, which is again the definition of sale. If I deliver it to somebody, it doesn't have to be for money. That is sale under our statute."[7] (Emphasis added.)

The different factual scenarios invoked by the state at trial concerned only one element of § 21a-278 (b), namely, knowing possession of marijuana with the intent to sell. The alternative factual scenarios of the defendant possessing the marijuana himself with the intent to sell it and holding the drugs for a third party in return for compensation constitute "neither alternative statutory subsections nor alternative statutory essential elements" of § 21a-278 (b). Id., 277. Accordingly, a specific unanimity instruction was not required in this case.

drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ." (Emphasis added.)

[6] Although "Jimmy" is the name that appears in the transcript of the state's closing argument, Special Agent Donahue Hibbert of the federal Drug Enforcement Administration used the name "Ricky" in his testimony concerning the defendant's statements.

[7] General Statutes § 21a-240 (50) defines "sale" as "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ."

We therefore hold that it was not reasonably possible that the absence of a specific unanimity instruction misled the jury.

### III

The defendant's third claim is that the court inadequately answered the jury's question on the conspiracy charge. He argues that the court's response failed to inform the jury that it needed to find that at least one other person entered into an agreement with the defendant to find him guilty of conspiracy. We disagree.

We begin by setting forth the standard of review for claims of improper jury instructions. "When we review jury instructions, we are obligated to view the charge itself in the context of the whole trial. . . . [J]ury instructions are not to be subjected to microscopic examination with an eye toward discovering possible inaccuracies. . . . Rather, the entire charge must be considered from the standpoint of its effect on the jury in guiding [it] to a proper verdict. . . . Jury instructions need not be exhaustive, perfect or technically accurate. . . . To pass constitutional muster, jury instructions must be correct in law, adapted to the issues in the case and sufficient to guide the jury in arriving at a verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Burgos*, 37 Conn. App. 404, 409, 656 A.2d 238, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995).

The defendant failed to preserve his claim at trial and now requests *Golding* review. See *State* v. *Golding*, supra, 213 Conn. 239–40. We will review the defendant's claim because the record is adequate for review, and he has raised a claim of constitutional magnitude. See *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993) (following established rule that claimed improper jury instruction on element of charged offense appealable even if not raised at trial). We conclude, however, that

the defendant has failed to show that the alleged violation clearly existed and clearly deprived him of a fair trial.

As the defendant concedes, the court gave an adequate charge on the elements of conspiracy. The court stated that "[a] person is guilty of conspiracy when with intent that conduct constituting a crime be performed, he or she agrees *with one or more persons* to engage in or cause the performance of such conduct and any one of them commits an overt act in pursuance of such a conspiracy. There are, therefore, three elements to this crime: An intent that criminal conduct be performed, two, an agreement *with one or more persons* to engage in or cause the performance of that conduct and, three, the commission of an overt act . . . ." (Emphasis added.)

The jury then inquired as to whether the defendant could be found guilty of conspiracy without also finding the codefendant, Suzette Royal,[8] guilty. The court responded affirmatively: "The answer to that question is yes. The conspiracy charges read that [the defendant] agreed with Suzette Royal and others unknown. The word 'with' leads us to believe that if a conspiracy existed, that Suzette must be included as part of the conspiracy. Is this the case? The answer to that is no."

We conclude that the court's instructions and answer, when viewed as a whole, informed the jury that to convict the defendant of conspiracy, it had to find that he had entered into an agreement with at least one other person, not necessarily Royal, to find him guilty of conspiracy.

## IV

The defendant's final claim is that the court improperly instructed the jury on the state's burden of proof

---

[8] See footnote 1.

beyond a reasonable doubt. He argues that the court's choice of language violated his federal constitutional rights to due process and a fair trial. We disagree.

"A defendant in a criminal case is entitled to a clear and unequivocal charge by the court that his guilt must be proved beyond a reasonable doubt. . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *State* v. *Hall*, 66 Conn. App. 740, 759, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002).

The court charged that a reasonable doubt is "a real doubt, an honest doubt." Our Supreme Court has approved the use of that language. *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998) (approving language " 'reasonable doubt is a real doubt, an honest doubt' ").

The defendant also challenges the language, "[a] doubt that has its foundation in the evidence or the lack of evidence in a case." Our Supreme Court also has approved the use of that language. *State* v. *Taylor*, 239 Conn. 481, 504–505, 687 A.2d 489 (1996) (holding that words, " 'a doubt which has its foundation in the evidence or lack of evidence' " did not unconstitutionally dilute burden of proof), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

The court charged the jury, in relevant part, that reasonable doubt "is that kind of doubt that would make a reasonable person hesitate to act. . . . That is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance." That language has been upheld. See *State* v. *Griffin*, 253 Conn. 195, 207, 749 A.2d 1192 (2000) (upholding instruction characterizing reasonable doubt

as "doubt that would cause reasonably prudent person to 'hesitate' to act in matters of importance").

The defendant also challenges the language, "[a] reasonable doubt is a doubt for which a valid reason can be assigned." Our Supreme Court has approved that language. See *State* v. *Findlay*, 198 Conn. 328, 345–46, 502 A.2d 921 (upholding instruction as contrasting doubt founded on reason from purely speculative doubt), cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

Finally, the defendant challenges the charge, "[t]he meaning of reasonable doubt, as I say, is arrived at by emphasizing the word reasonable. It is not a surmise or a guess or conjecture. Ifs and buts play no role. It is such a doubt as in the serious affairs that concern you, you would paid some heed." Again, it is permissible to define reasonable doubt as a doubt founded on reason instead of on mere speculation. See *State* v. *Derrico*, 181 Conn. 151, 171, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

We conclude that none of the challenged instructions, when considered in the broader context of the court's instructions as a whole, diluted the state's burden of proof or misled the jury in any way. The defendant's claim is therefore without merit.

The judgment is affirmed.

In this opinion the other judges concurred.