******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL D. *v.* COMMISSIONER OF CORRECTION*
(AC 41622)

DiPentima, C. J., and Bright and Lavery, Js.

*Syllabus*

The petitioner, who had been convicted of two counts of risk of injury to a child in connection with his alleged conduct in sexually abusing the minor victim on three separate occasions between 2001 and 2003, sought a writ of habeas corpus, claiming that he received ineffective assistance from the counsel who had represented him with respect to his criminal trial. Specifically, he claimed, inter alia, that his trial counsel had rendered ineffective assistance in failing to challenge the admission into evidence of a pornographic magazine in which young females were depicted in sexually suggestive settings and poses by ensuring that the trial court conduct an in camera review of the magazine. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly determined that trial counsel's conduct in attempting to preclude the magazine did not constitute deficient performance; the petitioner's trial counsel testified regarding the numerous steps they took in their attempt to preclude the admission of the magazine, including filing a motion in limine, presenting expert testimony, and making two requests on the record that the magazine be reviewed by the court, which stated that it would review the magazine's contents, and the habeas court found that trial counsel's failure to make an in camera request in writing, or to further press the court on whether it actually had reviewed the magazine, after counsel at least twice had made the specific request on the record that the court do so, did not constitute acts or omissions serious enough to establish that they were not functioning as the counsel guaranteed by the sixth amendment.

2. The petitioner could not prevail on his claim that his trial counsel provided ineffective assistance by failing to request a jury instruction that the jury must unanimously agree on the factual basis for each guilty verdict; although the petitioner claimed that a unanimity instruction should have been provided to the jury given that the three alleged incidents of sexual assault were separate and distinct, and that if counsel had requested a unanimity instruction, there was a reasonable probability that the trial would have resulted in a more favorable verdict, the habeas court properly determined that the petitioner failed to establish prejudice resulting from trial counsel's failure to request a specific unanimity instruction, as the trial court gave a general unanimity charge to the jury prior to its deliberations and instructed the jury to consider each count separately and independently from the others, and the habeas court found that there was no evidence that jurors relied on different incidents and facts to support their verdicts without the specific unanimity instruction.

Argued September 18—officially released December 24, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Kwak, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's

attorney, and *Rebecca A. Barry*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVERY, J. The petitioner, Michael D., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claims that the habeas court erred in concluding that he did not prove that his trial counsel provided ineffective assistance of counsel by failing (1) to ensure that a pornographic magazine was not admitted into evidence by ensuring that the trial court conduct an in camera review of the magazine and (2) to request a specific unanimity instruction. We disagree and affirm the judgment of the habeas court.

The following facts—as gleaned from the record, by this court in the petitioner's direct appeal from his conviction and by the habeas court in its memorandum of decision—and procedural history are relevant to our disposition of the appeal. "The [petitioner] and Ann P. were married in December, 1999. At the time of their marriage, Ann P. had a six year old daughter from a previous relationship, the victim. From 1999 until 2005, the [petitioner] lived with [Ann P.] and the victim in Meriden. The state alleged that the [petitioner] sexually assaulted the victim on three separate occasions between 2001 and 2003. The victim testified that the assaults had taken place at intervals of approximately one year . . . .

\* \* \*

"In October, 2004, Ann P. became suspicious that the [petitioner] was having an affair. Believing that she might find evidence of her husband's suspected infidelity, Ann P. searched the vehicle the [petitioner] regularly drove . . . . Secreted in a small storage space behind the rear row of seats in the vehicle she found a plastic bag. Upon examining the contents of the bag, she discovered that it contained several articles of her daughter's outgrown clothing . . . and two pornographic magazines: an unnamed adult fetish magazine and another magazine entitled 'Barely Legal,' in which young females were depicted in sexually suggestive settings and poses. . . . At some point, she went through the bag and discovered that some of her daughter's clothing felt 'stiff' to the touch, which she attributed to the possible presence of semen. Shortly after discovering the bag and its contents, Ann P. filed for divorce. The divorce was finalized in February, 2005.

"In the years following the divorce, Ann P. occasionally asked her daughter 'in a roundabout way' whether 'anybody [had] ever done anything' inappropriate to her. . . . She disclosed at that time that the [petitioner] had sexually assaulted her." *State* v. *Michael D.*, 153 Conn. App. 296, 299–301, 101 A.3d 298, cert. denied, 314 Conn. 951, 103 A.3d 978 (2014).

On October 27, 2009, the petitioner was arrested and charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), risk of injury

to a child in violation of General Statutes § 53-21 (a) (1), and risk of injury to a child in violation of § 53-21 (a) (2). He was represented by public defenders Joseph Lopez and Tejas Bhatt. Prior to trial, in a memorandum of law in support of a motion in limine filed on January 18, 2012, defense counsel moved to preclude from evidence the "Barely Legal" magazine (magazine) and the shorts found in the petitioner's car on the grounds that such items were "immaterial, irrelevant, unreliable and, even if relevant, their admission would be unfairly prejudicial and outweigh whatever minimal probative value they possess." In support of the motion, trial counsel presented the testimony of Dennis Gibeau, a clinical psychologist specializing in the assessment and treatment of sexual offenders.[1] The trial court denied this motion, and counsel orally renewed the motion. The court stood by its prior ruling and admitted the magazine as a full exhibit at trial.

The petitioner was convicted, after a three day jury trial, of both risk of injury to a child charges but was acquitted of the sexual assault charge. He subsequently filed a direct appeal, and this court affirmed the petitioner's conviction. See *State* v. *Michael D.*, supra, 153 Conn. App. 299.

On June 12, 2017, the petitioner filed the operative amended habeas petition, in which he alleged that his criminal trial counsel, attorneys Lopez and Bhatt, had provided ineffective assistance of counsel. Following a trial on December 11, 2017, the habeas court denied the petition in a written memorandum of decision issued on April 9, 2018. The petitioner then filed a petition for certification to appeal the habeas court's decision on April 17, 2018, which the court granted on April 19, 2018. This appeal followed.

The petitioner claims that the habeas court erred in concluding that he failed to prove ineffective assistance of counsel by his trial attorneys. He contends that Lopez and Bhatt rendered ineffective assistance by failing (1) to assert a proper challenge to the admission of the magazine into evidence by ensuring that the trial court conducted an in camera review of the magazine and (2) to request a specific unanimity instruction. We are not persuaded.

"In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 720, 789 A.2d 1046 (2002).

"A criminal defendant's right to the effective assistance of counsel . . . is guaranteed by the sixth and fourteenth amendments to the United States constitu-

tion and by article first, § 8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." (Citations omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

The petitioner has the burden of establishing that "(1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575, 941 A.2d 248 (2008).

Ultimately, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* v. *Washington*, supra, 466 U.S. 686. "A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong . . . ." (Internal quotation marks omitted.) *Brian S.* v. *Commissioner of Correction*, 172 Conn. App. 535, 539, 160 A.3d 1110, cert. denied, 326 Conn. 904, 163 A.3d 1204 (2017).

I

We first address the petitioner's claim that the habeas court erred in concluding that he had failed to prove that trial counsel had rendered ineffective assistance by failing to challenge the admission of the magazine into evidence by ensuring that the trial court conduct an in camera review of the magazine. He contends that the attorneys were aware of the impact the magazine could have on the jury. In particular, the petitioner argues: "They also knew that it needed to be *understood* to appreciate how irrelevant and prejudicial it truly was. They failed to take steps to make [the trial court] understand the magazine . . . ." (Emphasis in original.) Specifically, the habeas court found that the petitioner's amended petition claimed that trial counsel provided ineffective assistance by "failing to (1) file a written request for an in camera review of the 'Barely Legal' magazine found in the petitioner's vehicle, (2) ask the trial court to articulate whether it had made an in camera review of the magazine, [and] (3) ask the trial court to reconsider its ruling based on an in camera review of the magazine . . . ." The respondent, the Commissioner of Correction, argues that the habeas court was correct in concluding that the petitioner failed to prove that "his counsel performed deficiently

in their efforts to preclude the magazine, where they filed a motion in limine and presented testimony, evidence, and argument in support of the motion . . . ." We agree with the respondent.

"To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006), quoting *Strickland* v. *Washington*, supra, 466 U.S. 687. "It is not enough for the petitioner to simply prove the underlying facts that his attorney failed to take a certain action. Rather, the petitioner must prove, by a preponderance of the evidence, that his counsel's acts or omissions were so serious that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment, and as a result, he was deprived of a fair trial." *Jones* v. *Commissioner of Correction*, 169 Conn. App. 405, 415–16, 150 A.3d 757 (2016), cert. denied, 324 Conn. 909, 152 A.3d 1246 (2017). When assessing trial counsel's performance, the habeas court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland* v. *Washington*, supra, 689.

Both trial attorneys testified at the habeas trial and conceded that neither conclusively knew whether the trial court ever had reviewed the contents of the magazine. They also testified, however, to the numerous steps they took in their attempt to preclude the magazine from being admitted into evidence. When Attorney Lopez asked the trial court to reconsider its ruling, he specifically asked the court to review the contents, and not just the cover, of the magazine in balancing its potential prejudicial effect against its probative value. The trial court responded that it would review the magazine's contents and rule on the petitioner's request for reconsideration the next morning.[2] Additionally, Attorney Bhatt orally requested that the trial court articulate the relevancy of the magazine as related to the petitioner's sexual interest.[3] Prior to the trial court's ruling, Attorney Bhatt presented further argument for reconsideration and commented on the court's previous assertion that it would review the contents of the magazine.[4]

The habeas court found that trial counsel's conduct in attempting to preclude the magazine did not constitute deficient performance. In its memorandum of decision, the court highlighted the various actions that counsel undertook, including filing a motion in limine, presenting expert witness testimony, and making two requests to the court, on the record, to review the magazine and reconsider its ruling.

The habeas court found that trial counsel's failure to make an in camera request in writing, or to further press the court on whether it actually had reviewed the magazine, after counsel at least twice had made the specific request on the record that the court do so, did not constitute acts or omissions serious enough to establish that they were not "functioning as the counsel guaranteed by the sixth amendment." The petitioner has presented nothing that persuades us that the habeas court erred in its conclusion. Having found no error in the habeas court's deficient performance analysis on the petitioner's claim that counsel provided ineffective assistance on the ground that they failed to ensure that the pornographic magazine was excluded from evidence, we need not consider the petitioner's prejudice argument.

## II

We next address the petitioner's claim that trial counsel provided ineffective assistance by failing to request a jury instruction that the jury must unanimously agree on the factual basis for each guilty verdict. The petitioner contends that a unanimity instruction should have been provided to the jury, given that the three incidents were separate and distinct. The petitioner argues that trial counsel "could, and should, have requested a specific unanimity instruction so as to ensure that the jury unanimously found at least one act had been proven beyond a reasonable doubt. There was no strategic reason not to make this request, and every reasonable strategic reason to do so. Worst of all, [trial counsel] knew they had to take this step and simply forgot to do so."[5] The petitioner also argues that the habeas court erred in finding that he had not established prejudice from counsel's failure to request such an instruction. We disagree.

"A specific unanimity instruction is required . . . where the particular count under consideration by the jury is based on multiple factual allegations which amount to multiple statutory subsections or multiple statutory elements of the offense involved." (Internal quotation marks omitted.) *State* v. *Bailey*, 82 Conn. App. 1, 6, 842 A.2d 590, cert. denied, 269 Conn. 913, 852 A.2d 744 (2004). "[W]e have not required a specific unanimity charge to be given in every case . . . In *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), we set forth a multipartite test to determine whether a trial court's omission of a specific unanimity charge warrants a new trial. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which

the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged. . . .

"This court is required to conclude, when reviewing a court's instruction to the jury, that [t]he absence of language expressly sanctioning a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test." (Citations omitted; internal quotation marks omitted.) *State* v. *Jessie L. C.*, 148 Conn. App. 216, 232, 84 A.3d 936, cert. denied, 311 Conn. 937, 88 A.3d 551 (2014).

In the present case, the trial court gave a general unanimity charge to the jury prior to its deliberations. It instructed the jury to consider each count separately and independently from the others: "Each count alleges a separate crime. It will be your duty to consider each count separately in deciding the guilt or nonguilt of the defendant. This means that the determination of one count or charge does not automatically make the defendant guilty or not guilty on any other count or charge. Each count must be considered separately by you." As the court went through each of the counts, it instructed the jury that it must unanimously agree that each element of the crimes charged was proven beyond a reasonable doubt.[6]

The habeas court found that trial counsel "intended to request an additional instruction informing the jurors that they must unanimously agree on the factual basis for their guilty verdicts, but failed to do so." It declined to address whether it was an error on the counsel's part, stating only that it may be "arguable." The habeas court, therefore, did not rule on the deficient performance prong but, instead, analyzed the prejudice prong of the *Strickland* test, and it concluded that the petitioner had failed to prove that he was prejudiced by the "arguable" deficient performance of counsel in failing to request a specific unanimity instruction. We agree with the habeas court's analysis.

The petitioner argues that the habeas court erred in finding that he failed to prove that he was prejudiced by his trial counsel's failure to request a unanimity instruction. According to the petitioner, if such instruction were requested, there was a "reasonable probability" that the trial would have resulted in a more favorable verdict. He argues that such an instruction may have led to a more favorable outcome because he believes the jury did not agree on the factual basis for his conviction based on the mixed verdict. We disagree.

Under the prejudice prong, the petitioner must show "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 101, 52 A.3d 655 (2012). "The second prong is thus satisfied if the

petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 522, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

The habeas court found that "there [was] no evidence that jurors relied on different incidents and facts to support their verdicts without the specific unanimity instruction. There is no evidence that had the jury been forced to identify a unanimous factual basis for their verdicts, there is a reasonable probability that the trial would have had a different outcome in the petitioner's favor."

In *State* v. *Bailey*, supra, 82 Conn. App. 7–8, this court held that because a specific unanimity instruction was not required, "it was not reasonably possible that the absence [of such an] instruction misled the jury." We hold the same to be true in the present case that the jury was not misled by the absence of such an instruction. "[G]iven the court's admonitions concerning unanimity, we must presume that the jury, in the absence of a fair indication to the contrary . . . followed the court's instruction as to the law." (Internal quotation marks omitted.) *State* v. *Jessie L. C.*, supra, 148 Conn. App. 233.

Furthermore, on the petitioner's direct appeal, this court specifically addressed and rejected the petitioner's contention that the jury's mixed verdict—finding the petitioner guilty of risk of injury but acquitting him of sexual assault—indicated a likelihood that it was nonunanimous. This court wrote: "The record reflects that the jury deliberated for three days, during which it requested and heard playback testimony of Ann P. and the victim. . . . The [trial] court further cautioned that there is no principle of law for less than a unanimous verdict. It is well settled that [t]he jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instruction as to the law. . . . The record suggests that the jury considered the evidence in an assiduous fashion guided by the court's correct instructions on the law. Accordingly, we decline to impute nonunanimity to the jury's verdict because it chose, after careful deliberation, to acquit on the charge of sexual assault.

"[W]e are ever mindful that the defendant is entitled to be protected against the danger that . . . he will be convicted not on the basis of one unanimous verdict on a single set of facts but under juror votes of conviction which, depending on the particular member of the jury, relate to entirely different [occasions] . . . . Here, however, there was no risk that the jury's verdict was not unanimous. The central question for the jury was whether the victim should be believed. The jury consid-

ered that question, at length, against the backdrop of the defendant's argument, impugning the victim's credibility, and imploring the jurors to discredit her testimony as to all of the reported incidents, not just some." (Citations omitted; internal quotation marks omitted.) *State* v. *Michael D.*, supra, 153 Conn. App. 326–27. Accordingly, we conclude that the habeas court did not err in finding that the petitioner failed to establish prejudice resulting from trial counsel's failure to request a specific unanimity instruction.

On the basis of our review of the parties' briefs and the record of the criminal and habeas trial, we conclude that the findings of the habeas court are supported by the facts that appear in the record and are not clearly erroneous. Furthermore, we conclude that the habeas court's conclusion that the petitioner was not deprived of his constitutional right to the effective assistance of counsel was correct. The court had before it sufficient evidence to find as it did, and, accordingly, it properly denied the petitioner's habeas petition.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The habeas court stated that Gibeau testified "regarding the distinctions between the physical and sexual characteristics of prepubescent girls and postpubescent girls, and concluded that it would be speculative to link an interest in a Barely Legal magazine depicting postpubescent girls with a pedophilic attraction to young children." Upon cross-examination, however, he conceded that, when considered together with the victim's clothing and the fact that such items were found in the petitioner's car, it could be clinically inferred that the petitioner had a specific sexual interest in this particular victim.

[2] The following colloquy occurred between the petitioner's trial counsel and the trial court:

"[Lopez]: Your Honor, I would ask that you view that Barely Legal magazine and perhaps reconsider. I think that if that magazine is going in with the jury as a full exhibit that that is, in my opinion, so prejudicial as to denying this man a fair trial.

"The Court: All right, I will—I've already made my ruling. You want me to review the magazine? I'm getting my ruling from the testimony I heard yesterday from the witness you called, what he indicated to this Court.

"[Lopez]: But is that magazine going to go into the jurors?

"The Court: I don't know. I don't know if it's going to go into the jury. If you want me to look at it prior to, I will. I don't have a problem with that.

"[Lopez]: I would request that.

"The Court: All right. Gentlemen, we're picking the jury tomorrow, so we have plenty of time on that. . . .

"[Lopez]: We're asking your Honor to look at the magazine, briefly. I mean it's only 4:30.

"The Court: I'll look at the magazine and at 9:30, I'll let you know."

[3] The following colloquy occurred between the petitioner's trial counsel and the trial court:

"[Bhatt]: Just to clarify for articulation purposes, the court's ruling would be that the magazine, the shorts and the items in the bag are relevant and that their probative value is not outweighed by the prejudicial impact?

"The Court: That's right.

"[Bhatt]: And I guess the other point of clarification, we would ask the court to explain or articulate. The court mentioned or referenced several times the magazine being an indication of the defendant's interest in young girls and we would submit to the court to be considerate of that in light of

the testimony that the doctor drew a distinction between young women and young girls and prepubescent and postpubescent is the court's ruling that the magazine is indicative of his interest in prepubescent girls with the age of the complainant or younger women who were teenagers, but older than the complainant. I think it's an important distinction based on the testimony of the doctor and we ask the court to articulate that in its decision.

"[The state]: I would object to the court having to articulate that. I think the court has articulated its reasons.

"The Court: I have made my decision."

[4] The following colloquy occurred between the petitioner's trial counsel and the trial court:

"[Bhatt]: I believe at the end of the day the court indicated that prior to this morning it would review the—the magazine in question. We would ask the court to reconsider and I don't know if the court has done that, but I wanted to add a couple of things to that.

"Again, we are asking the court to reconsider its decision. The court relied—reading from the [Connecticut] Code of Evidence on [*State* v. *Rinaldi*, 220 Conn. 345, 599 A.2d 1 (1991)] and [*State* v. *Miller*, 202 Conn. 463, 522 A.2d 249 (1987)] which talks about a tendency to support a fact relevant to the issues if only in a slight degree.

"Again, we would—our position would be that if it's read in context with the rest of the cases it's not—it doesn't mean that any fact that has a relevance to a slight degree read with the other cases which talk about that make the probability—make the existence of a fact more probable than not and the slight degree is only tipping the scales in favor of. It is more probable than not.

"So, again, our position would be that this evidence, if even relevant to a slight degree, does not [rise] to the level of being more probable than not with cases which we cited in our brief and we would ask that the court, again, reconsider its decision. And, finally, even if it is relevant we would ask the court and I'm not sure if I did this yesterday—but we would ask the court to clarify it is finding that its probative value is outweighed by its prejudicial impact.

"Again, the court is aware that the defense's position is that this has been a prejudicial piece of evidence. And, finally, again, I—thinking about this last night and I don't mean to reargue this and I'm not going to, but I just— it seems to me that the purpose of the State introducing this evidence is to convince the jury that this is somebody who has a disposition to having sex—being sexually aroused by minors.

"That is dangerously close to, if not propensity of the evidence and I understand the State has said it's not offering it as an uncharged misconduct, but I would just like the record to be clear with our position that in our opinion it—it essentially is without calling it so that it is dangerously close to propensity of the evidence and should not be permitted.

"The Court: All right. Well, you've made the argument yesterday. You're supplementing it today. I stand by my ruling and I put the reasons on the record."

[5] During the habeas trial, the following colloquy took place during Attorney Bhatt's redirect examination:

"[O'Brien]. Okay. Now, just moving on briefly to the unanimity instruction. Did you think of asking for a specific unanimity instruction prior to the case going to verdict?

"[Bhatt]. Yeah. When we were thinking about the long-form and how to deal with it, I think there was a conversation in which it came up, and we said we should file a specific—a unanimity instruction—  . . .

"[O'Brien]. Okay. So is it fair to say that isn't just a thought that you had after the verdict was rendered.

"[Bhatt]. No.

"[O'Brien]. It's fair to say you—that's not just something you thought of later, right?

"[Bhatt]. Correct.

"[O'Brien]. Okay.

"[Bhatt]. Because I mean—and I remember—only because I remember thinking to myself I forgot to do that."

[6] Regarding count one (violation of §53a-70a [2]), the court instructed the following: "If you unanimously find that the state has proven beyond a reasonable doubt each of the elements of the crime of sexual assault in the first degree then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements you shall then find the defendant not guilty."

Regarding count two (violation of § 53-21 [a] [2]), the court instructed the following: "If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of risk of injury to a minor then you shall find the defendant guilty. On the other hand, if you unanimously find the state has failed to prove beyond a reasonable doubt any of the elements you shall then find the defendant not guilty."

Regarding count three (violation of § 53-21 [a] [1]), the court instructed the following: "If you unanimously find that the state has proven beyond a reasonable doubt each of the elements of the crime of risk of injury to a minor then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements you shall then find the defendant not guilty."

———————————————